IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITIZENS FOR FREE SPEECH, LLC, ET AL., | No. C14-02513 CRB |
| Plaintiffs, | **ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| COUNTY OF ALAMEDA, | |
| Defendant. | |

Plaintiffs brought suit against the County of Alameda ("County"), alleging that the County's regulation of billboards and advertising signs is unconstitutional. See generally Compl. (dkt. 1). Plaintiffs now move for a preliminary injunction, claiming that the County's comprehensive zoning law, codified as Title 17 of the Alameda County General Ordinance Code (the "Zoning Ordinance"), violates their First Amendment rights and is facially invalid. See Mot. (dkt. 11) at 2 ("the Code is facially unconstitutional").[1] As explained below, the Court will GRANT the Motion for Preliminary Injunction.

---

[1] Plaintiffs also claim for the first time in their Reply to be asserting an "as applied" challenge, although they never discuss it further. See Reply (dkt. 28) at 1. The Court does not consider arguments raised for the first time in a reply brief. See United States v. Romm, 455 F.3d 990, 997 (9th Cir. 2006); United States ex rel. Giles v. Sardie, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000). While as-applied challenges are favored over facial challenges, see Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 450-51 (2008), and while, as Plaintiffs point out in their supplemental filing (which the Court allowed only to address the issue of publication), an as-applied challenge need not have been raised in the complaint, see Pls.' Supplemental Br. (dkt. 33) at 2 (quoting Citizens United v. FEC, 558 U.S. 310, 331 (2010)), here Plaintiffs' failure to ever discuss an as-applied challenge in any of their papers leaves the Court unable to adjudicate the merits of such a challenge (and the County unable to defend against one).

## I. BACKGROUND

The Zoning Ordinance zones the County's unincorporated territory into twenty-five different types of district, within which only certain buildings, structures, or land uses are permitted. Zoning Ordinance § 17.02.050.[2] Michael Shaw owns a parcel of land located at 8555 Dublin Canyon Road (the "Parcel") in the County. Shaw Decl. (dkt. 11-3) ¶ 2. The Parcel is located in an area zoned as a Planned Development ("PD") district. Id.

Shaw also owns Lockaway Storage, a self-storage business that currently operates on the Parcel. Shaw Decl. ¶ 4. Lockaway Storage operates pursuant to a Conditional Use Permit ("CUP") that authorizes the business to operate in a PD district. Id. ¶ 2; Mot. Ex. A (dkt. 11-5). The County issued the CUP in January 2012, and since then Shaw has maintained a single on-site sign that advertises for Lockaway Storage. Shaw Decl. ¶ 3, Mot. Ex. A.

Shaw and Citizens for Free Speech, LLC (collectively "Plaintiffs") entered into an agreement that provides for the construction and display of three additional signs (the "Signs") on the Parcel. Herson Decl. (dkt. 11-4) ¶ 2. They agreed to share in the proceeds earned from displaying the Signs. Id.; Shaw Decl. ¶ 7. The Signs, now constructed, feature entirely noncommercial messages that "challenge the political ideology espoused by County officials," but will contain commercial messages in the future. Herson Decl. ¶ 3; Mot. Ex. E (dkt. 11-9); Compl ¶ 12.

According to Shaw, a County official visited the Parcel on June 9, 2014 to inform him that the Signs were prohibited within an SC district.[3] Shaw Decl. ¶ 4. On June 10, 2014, the County mailed Shaw a "Declaration of Public Nuisance – Notice to Abate," claiming that the

---

[2] The Court takes judicial notice of the Zoning Ordinance. See Pls.' Request for Judicial Notice ("RJN") (dkt. 11-2).

[3] Plaintiffs assert that the Parcel is zoned in a PD district that is located within a larger SC district. Shaw Decl. ¶ 2. The County acknowledges that the Parcel is in a PD district, but responds that no territories within in its jurisdiction have yet been zoned as SC districts. Rivera Decl. (dkt. 24) at 2. The parties agreed at the motion hearing that it is irrelevant whether the Parcel is in an SC district.

2

Signs violated Zoning Ordinance sections 17.18.010 and 17.18.120.[4] Id. ¶¶ 5, 6; Mot. Exs. C, D (dkt. 11-7, 11-8).  Section 17.18.010 states that PD districts are:

> established to encourage the arrangement of a compatible variety of uses on suitable lands in such a manner that the resulting development will:
> A. Be in accord with the policies of the general plan of the county;
> B. Provide efficient use of land that includes preservation of open areas and natural and topographic landscape features with minimum alteration of natural land forms;
> C. Provide an environment that will encourage the use of common open areas for neighborhood or community activities and other amenities;
> D. Be compatible with and enhance the development of the general area;
> E. Create an attractive, efficient and safe environment.

Zoning Ordinance § 17.18.010.  Section 17.18.120 states that "[a]ny land use within the boundaries of a [PD] district adopted in accordance with the provisions of this chapter shall conform to the approved land use and development plan." Id. §17.18.120.  The Notice to Abate stated that the "specific violation is unlawful signs (billboards)," but did not explain how sections 17.18.010 or 17.18.120 apply to the Signs on the Parcel or signs in general. See Mot. Ex. C.  The Notice to Abate instructed Shaw to remove the signs or face an abatement proceeding and an escalating schedule of fines.  Id.

Plaintiffs sued and moved for a temporary restraining order against the County.  See generally Mot.  The parties then stipulated to treat the application for a temporary restraining order as a motion for preliminary injunction.  See Stipulation (dkt. 17).  The County waived any bond requirement.  Id. at 2.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions.  To obtain a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  "A preliminary injunction is an extraordinary remedy never awarded as of right.  In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or

---

[4] Sections 17.18.010 and 17.18.120 relate to PD districts and do not regulate SC districts.

3

withholding of the requested relief.  In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Id. at 24 (internal citations omitted).  The Ninth Circuit has adopted a sliding scale approach to preliminary injunctions in which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).

There are two types of facial constitutional challenges.  "First, a plaintiff seeking to vindicate his own constitutional rights may argue that an ordinance 'is unconstitutionally vague or . . . impermissibly restricts a protected activity.'" Santa Monica Food Not Bombs v. City of Santa Monica, 450 F.3d 1022, 1033 (9th Cir. 2006) (quoting Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998)).  "Second, 'an individual whose own speech or expressive conduct may validly be prohibited or sanctioned is permitted to challenge a statute on its face because it also threatens others not before the court.'" Id. at 1033 (quoting Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503 (1985)).

## III.   DISCUSSION

### A.   Plaintiffs Have Standing to Challenge the Zoning Ordinance

As a preliminary matter, although Plaintiffs do not challenge the constitutionality of the provisions cited in the Notice to Abate, the Court finds that they have standing to challenge the Zoning Ordinance's other provisions.  "As a general rule, a litigant has standing only to vindicate his own constitutional rights.  The Supreme Court, however, has recognized 'an exception to this general rule for laws that are written so broadly that they may inhibit the constitutionally protected speech of third parties.'" S.O.C., Inc. v. Cnty. of Clark, 152 F.3d 1136, 1142 (9th Cir. 1998) (citations omitted).

In the First Amendment context, "the general rule [of only allowing litigants to vindicate their own rights] is disregarded because of the possibility that protected speech . . . may be inhibited by the overly broad reach of [a regulation.]" Id. at 1142-43 (internal quotations omitted).  Here, Plaintiffs' arguments are best characterized as "overbreadth"

4

challenges.  See S.O.C., 152 F.3d at 1144 (ordinance that improperly restricts fully protected noncommercial speech is overbroad); U.S. v. Linick, 195 F.3d 538, 542 (9th Cir. 1999) (regulations that vest officials with unbridled discretion to deny expressive activity are overbroad on their face).  Thus, under the Supreme Court's "overbreadth" doctrine, Plaintiffs may challenge the other provisions of the Zoning Ordinance by "showing that [those provisions] may inhibit the First Amendment rights of individuals who are not before the court."  See 4805 Convoy, Inc. v. City of San Diego, 183 F.3d 1108, 1112 (9th Cir. 1999).

### B.  Likelihood of Success on the Merits

An "overbreadth" challenge to a local ordinance must show that the ordinance "seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad." S.O.C., 152 F.3d at 1142 (internal quotations omitted).  Plaintiffs argue that the Zoning Ordinance is overbroad and facially unconstitutional because it (1) regulates billboards and advertising signs without identifying a substantial governmental purpose; (2) regulates speech based on its content by allowing some commercial speech while disallowing all noncommercial speech;[5] and (3) gives certain County officials the power to regulate speech based on content by giving them unfettered discretion to allow variances or to permit signs with certain types of content.[6]  Mot. at 3.  As explained below, Plaintiffs are only likely to succeed on the merits of their third argument.

#### 1. The Zoning Ordinance States Substantial Government Interests for the County's Restrictions on Commercial Speech

Plaintiffs first contend that "the [Zoning Ordinance] is unconstitutional because it does not contain a stated purpose for speech restrictions."  Mot. at 5.  To determine the constitutionality of restrictions on commercial speech, courts apply a three-part test.  An ordinance that restricts commercial speech that is not misleading and concerns lawful activity

---

[5] Plaintiffs' motion explicitly challenges the regulation of billboards in SC districts and does not explicitly challenge the County-wide billboard ban at section 17.52.515(A) of the Zoning Ordinance. However, Plaintinffs implicitly challenge the latter by arguing that certain exemptions to that provision create unconstitutional content-based regulation of protected speech.  See Mot. at 4.

[6] Plaintiffs also assert in passing that enforcement of the Zoning Ordinance will infringe upon their Due Process Rights, but they fail to discuss that argument at all.  See Mot. at 13.

5

1   must: (1) seek to implement a substantial governmental interest; (2) directly advance that
2   interest; and (3) reach no further than necessary to accomplish the given objective. Cent.
3   Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n. of New York, 447 U.S. 557, 563-66
4   (1980); Desert Outdoor Advertising, Inc. v. City of Moreno Valley, 103 F.3d 814, 819 (9th
5   Cir. 1996).

6   Although Plaintiffs concede that aesthetics and safety are substantial government
7   interests, they argue that the Zoning Ordinance "lacks any statement of purpose concerning
8   those interests, rendering the speech restrictions . . . invalid." Mot. at 11. They characterize
9   the various "Purpose" provisions throughout the Zoning Ordinance as "meaningless" and
10  contend that those sections fail to "explain how speech restrictions serve a substantial
11  government interest. " Id. at 11-12.

12  The Court takes judicial notice of the 2008 version of the Zoning Ordinance, which
13  contained specific reasons for the County-wide billboard ban at section 17.52.515(B). Def.'s
14  RJN, Ex. A (dkt. 20-1) at 12 (purpose of County-wide ban on new billboards and advertising
15  signs is to "advance the County's interests in community aesthetics by the control of visual
16  clutter, pedestrian and driver safety, and the protection of property values;"). In 2010, the
17  Board of Supervisors amended subsection 17.52.515(A), and the Board's Ordinance No.
18  2010-49 stated that only subsection A was being amended and that no other changes were
19  made to that section. Campbell-Belton Decl. (dkt. 22) at 2; Def.'s RJN, Ex. B (dkt. 20-1) at
20  7. Nevertheless, the County's publisher mistakenly dropped subsections 17.52.515(B)-(G)
21  when it published the updated code. Campbell-Belton Decl. at 2. Notwithstanding the
22  publication error, which "was only discovered after this lawsuit was served upon the
23  County," Opp'n (dkt. 19) at 4, n.4, the County contends that sections 17.52.515(B)-(G)
24  remain in full force and effect, Campbell-Belton Decl. at 3.

25  In their Reply, Plaintiffs argue that the unpublished provisions of the Zoning
26  Ordinance have no effect. See Reply at 3-4 (citing Cal. Gov. Code §§ 25124(c), 25129,
27  50022.5). California Government Code section 25124(c) provides: "If the clerk of the board
28  of supervisors fails to publish an ordinance within 15 days after the date of adoption, the

6

ordinance shall not take effect until 30 days after the date of publication." The Court takes judicial notice of a Proof of Publication for Ordinance No. 2010-49, which satisfies the requirement of California Government Code section 25124 that ordinances be published either in a newspaper or in an official summary posted in the office of the clerk of the Board of Supervisors. Def.'s Supplemental RJN, Ex. I (dkt. 31-1); Cal. Gov. Code §§ 25124(a), (c). Accordingly, the Court finds that sections 17.52.515(B)-(G) are in effect.[7]

In light of section 17.52.515(B), which states that the purpose of the County-wide ban on new billboards and advertising signs is to "advance the County's interests in community aesthetics by the control of visual clutter, pedestrian and driver safety, and the protection of property values," the Court finds that Plaintiffs are unlikely to show that the Zoning Ordinance fails to identify a substantial government interest. See Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 507-08 (1981) ("Nor can there be substantial doubt that the twin goals that the ordinance seeks to further—traffic safety and the appearance of the city—are substantial government goals.").

The Ninth Circuit has explained that "the burden on the [County] of meeting the first prong of the Central Hudson test is not a great one." Moreno Valley, 103 F.3d at 819 n.2. The Zoning Ordinance only needs "a clear statement of purpose indicating the [County's] interest in eliminating hazards posed by billboards to pedestrians and motorists" or "in preserving and improving its appearance." See id. Plaintiffs cite National Advertising Co. v. Town of Babylon ("National Advertising II"), 900 F.2d 551, 556 (2d Cir. 1990), for the proposition that a "mere incantation of aesthetics as a proper state purpose" is insufficient. See Mot. at 11-12. Plaintiffs' characterization of that case is misleading. In National

---

[7] In their supplemental filing, Plaintiffs concede that the County has provided "proof of publication of the full text" and that it "may have complied with the letter of the Government Code." Pls.' Supplemental Br. at 1-2. Plaintiffs shift their attack, though, arguing that the County's "failure to include the full ordinance in the print and Internet-based versions of its Code of Ordinances" is the real problem, "injur[ing] the democratic principle" and "breach[ing] the spirit of the publication ordinance." Id. Plaintiffs ask for leave to engage in discovery into the County's sign rules. Id. at 2. Leave is denied. The County answered the specific challenge Plaintiffs made in their Reply brief; Plaintiffs may not have another bite at the apple. While the County's apparent failure to include the full ordinance in the print and Internet-based versions of the Code is troubling, Plaintiffs identified in their briefing no law requiring such "publication." Moreover, the Court notes that "the ordinance code itself need not be published in the manner required for other ordinances." See Cal. Gov. Code §§ 25128, 25126.

Advertising II, the Second Circuit discussed an Eleventh Circuit case in which a local regulation's stated purpose, which was "to safeguard life, public health, property and welfare," did not mention aesthetics, and the Eleventh Circuit "refused to accept counsel's 'mere incantation of aesthetics as a proper state purpose.'"  900 F.2d at 556 (emphasis added).  Here, unlike in National Advertising II, the Zoning Ordinance—not counsel—identifies substantial government interests, which the billboard ban advances.  Accordingly, the Court finds that the Zoning Ordinance will likely satisfy the first prong of the Central Hudson test, and that Plaintiffs are unlikely to succeed on the merits of their first argument.

### 2.   The Zoning Ordinance Does Not Place Greater Restrictions on Noncommercial Speech Than It Does on Commercial Speech, or Regulate Noncommercial Speech Based on Its Content

Plaintiffs' second argument is that the Zoning Ordinance places greater restrictions on noncommercial speech than on commercial speech, and that it regulates noncommercial speech based on its content.  The First Amendment protects both commercial and noncommercial speech but affords the latter a greater degree of protection.  Metromedia, 453 U.S. at 513.  A zoning ordinance is invalid if it imposes greater restrictions on noncommercial speech than it does on commercial speech.  National Advertising Co. v. City of Orange ("National Advertising I"), 861 F.2d 246, 248 (9th Cir. 1988) (citing Metromedia, 453 U.S. at 513, 516).  Thus in Metromedia, the Supreme Court found unconstitutional the City of San Diego's ordinance permitting onsite commercial billboards but banning (with some exceptions) noncommercial billboards.  453 U.S. at 513 ("Insofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages.").

The Zoning Ordinance in this case states that for "development or improvements within a . . . SC district . . . [n]o advertising signs shall be permitted." Zoning Ordinance §§ 17.30.240(A), 17.30.240(A)(14); see also § 17.52.550 (no advertising signs next to scenic routes).  The Zoning Ordinance's regulation of SC districts provides an exemption for "[d]evelopments existing on the effective date of this article, provided that expansions or additions . . . on or after the effective date of this article shall be subject to compliance with

8

these regulations." Id. § 17.30.210.

In addition to the prohibition on new billboards in SC districts, the Zoning Ordinance imposes a county-wide ban on new billboards in all unincorporated areas. It provides that "[n]otwithstanding any other provision in [the Zoning Ordinance], no person shall install, move, alter, expand, modify, replace or otherwise maintain or operate any <u>billboard or advertising sign</u> in an unincorporated area of Alameda County." Zoning Ordinance § 17.52.515(A). Exempted from this prohibition are "billboards or advertising signs which legally exist as of the time this section is first adopted" or for which a valid permit has been issued and has not expired. Id. § 17.52.515(A)(1), (2).

The County takes the position that the Zoning Ordinance's bans on new billboards and advertising signs encompasses noncommercial speech. Opp'n at 10. The County contends that Zoning Ordinance section 17.04.010 defines billboard as "a permanent structure or sign used for the display of offsite commercial messages and <u>shall include and be synonymous with 'advertising sign,'</u>" and that the Zoning Ordinance's definition of "advertising sign" is broad, see Zoning Ordinance § 17.04.010 (advertising sign defined as "any lettered or pictorial matter or device which advertises or informs about a business organization or event, goods, products, services or uses, not available on the property upon which the sign is located and does not include directional tract sign or community identification sign"); Opp'n at 10-11 ("the phrase 'business organization or event' and the term 'uses' can include a variety of messages that are not 'commercial' in nature. . .").

Plaintiffs also contend that the bans encompass noncommercial speech, but they reach that conclusion despite arguing that the Zoning Ordinance "has no provision whatsoever for noncommercial speech, whether on-premises or otherwise," and that "the terms 'billboard' and 'advertising sign' . . . must be read as applying only to commercial speech." See Mot. at 4-5; Reply at 10-11. Plaintiffs argue that the Zoning Ordinance somehow "ban[s] noncommercial speech when some commercial speech is permitted," because it "contains content-based exemptions permitting any sign . . . if it contains certain speech." Mot. at 4. They argue that "content based exemptions to an otherwise-content neutral sign ordinance

9

'take the regulation out of the domain of time, place, and manner restrictions.'" See Mot. at 4 (quoting Metromedia, 453 U.S. at 517).

The Court agrees with Plaintiffs that the Zoning Ordinance's bans on new "billboards" and "advertising signs" pertain only to commercial speech. The Zoning Ordinance's definition of "billboard" explicitly pertains to "offsite commercial messages," and its definition of "advertising sign" as a sign advertising or informing about a "business organization or event, goods, products, services or uses, not available on the property" does as well–particularly if it is to be synonymous with "billboard." See Zoning Ordinance § 17.04.010 (billboard defined as "a permanent structure or sign used for the display of offsite commercial messages and shall include and be synonymous with 'advertising sign;'" advertising sign defined as "any lettered or pictorial matter or device which advertises or informs about a business organization or event, goods, products, services or uses, not available on the property upon which the sign is located and does not include directional tract sign or community identification sign"). The County's interpretation to the contrary tortures the plain meaning of the definitions. See Royal Foods Co., Inc. v. RJR Holdings, Inc., 252 F.3d 1102, 1106 (9th Cir. 2001) (courts are to look at text of statute to determine if language has a plain and unambiguous meaning). Accordingly, the Court finds that the County-wide billboard ban and the SC district billboard ban—which only prohibit "billboards" and "advertising signs"—do not prohibit noncommercial speech at all. But the Court's agreement with Plaintiff on this point ends there.

Even though the County does not respond to Plaintiffs' argument about the content-based "exemptions," see generally Opp'n, the Court finds that Plaintiffs are unpersuasive. The Zoning Ordinance enumerates certain "permitted" signs (not necessarily billboards) that are all of a noncommercial nature.[8] See Zoning Ordinance § 17.52.520. However, contrary to Plaintiffs' characterization, nowhere does the Zoning Ordinance identify these permitted

---

[8] Permitted signs include, among others, the following: sale or lease signs; official public signs; no trespass signs; warnings; house and mailbox identifiers; street names; signs identifying a benefactor; signs of historical merit; signs identifying a location of historic interest; signs identifying statues or monuments; pedestrian and traffic signs; temporary political signs; and announcements related to meetings held at schools, churches, or other places of public assembly. Zoning Ordinance § 17.52.520.

10

1 signs as "exemptions" to a more generalized ban. See id. The Zoning Ordinance does not
2 ban noncommercial speech, and because exceptions cannot exist without a corresponding
3 general rule, the Court does not interpret the "permitted" signs to be exceptions to any
4 general ban on noncommercial speech.

5       This Court previously addressed a billboard ban in Maldonado v. Kempton, 422 F.
6 Supp. 2d 1169 (N.D. Cal. 2006). In that case, the challenged regulation prohibited "all
7 billboard 'advertising displays,'" but made an exception for "'on-premises' advertising."
8 Maldonado, 422 F. Supp. 2d at 1173-74. This Court concluded that the regulation was
9 unconstitutional because "the plain language of the Act prohibit[ed] noncommercial speech
10 while allowing on-premises commercial advertisements." Id. at 1174. The Court added that
11 this conclusion was supported by a provision which exempted temporary political signs. Id.
12 The regulation at issue in Maldonado defined "advertising display" in a way that could
13 include both commercial and noncommercial speech. See id. (advertising display refers to a
14 "structure of any kind or character erected, used, or maintained for outdoor advertising
15 purposes, upon which any poster, bill, printing, painting, or other advertisement of any kind
16 whatsoever may be placed"). It made sense, in that context, to understand the regulation's
17 allowance of temporary political signs as an exception to a general ban on noncommercial
18 signs. Here, in contrast, the Zoning Ordinance bans new "billboards" and "advertising
19 signs," but equates both with off-site commercial speech. See Zoning Ordinance
20 § 17.04.010. Because "billboards" and "advertising signs" are limited to off-site commercial
21 speech, the Court does not understand the list of permitted signs in the Zoning Ordinance to
22 be "exemptions" to bans on both commercial and noncommercial speech.

23       Further undermining Plaintiffs's position is section 17.52.515(C) of the Zoning
24 Ordinance. See Def.'s RJN, Ex. A at 13.[9] That provision contains the following substitution
25 clause:

---

[9] Like section 17.52.515(B), section 17.52.515(C) was inadvertently omitted from the publication of the County's General Ordinance Code. Campbell-Belton Decl. at 2-3. As already discussed, the Court finds that section 17.52.515(C) is in effect because, as Plaintiffs concede, the County satisfied its statutory obligation to publish the ordinance amending section 17.52.515. See Def.'s Supplemental RJN, Ex. I; Cal. Gov. Code §§ 25124(a), (c); Pls.' Supplemental Br. at 1-2.

11

> [A] noncommercial message of any type may be substituted for any duly permitted or allowed commercial message or any duly permitted or allowed noncommercial message in an advertising sign . . . <u>The purpose of this provision is to prevent any inadvertent favoring of commercial speech over noncommercial speech, or favoring any particular noncommercial message over any other noncommercial message.</u> This provision . . . does not create a right to increase the total amount of signage on a parcel . . . [or] allow the substitution of an off-site commercial message in place of an on-site commercial message.

Zoning Ordinance § 17.52.515(C) (emphasis added). The substitution clause supports the notion that the County is not favoring commercial speech. See Maldonado, 422 F. Supp. 2d at 1175 ("the majority of billboard ordinances that courts have held to be neutral towards non-commercial speech have contained what is referred to as a 'substitution clause.'"); Outdoor Sys., Inc. v. City of Mesa, 997 F.2d 604, 608-09, 612 (9th Cir. 1993) (discussing code that was content neutral because it contained a substitution clause). In their Reply, Plaintiffs argue that the substitution provision "has nothing to do with whether the [Zoning Ordinance] is content neutral" because, according to Plaintiffs, the Zoning Ordinance provides the aforementioned content-based exemptions. Reply at 13. Of course, the Court disagrees with the premise of Plaintiffs' argument.

The Court therefore finds that Plaintiffs are unlikely to succeed on the merits of their second argument because the Zoning Ordinance does not place greater restrictions on noncommercial speech than it does on commercial speech, or regulate speech based on content.

### 3. The Zoning Ordinance Gives Officials Too Much Discretion in Approving or Disapproving Signs Based on Their Content

Plaintiffs' third argument is that the Zoning Ordinance gives County officials unfettered discretion in approving or disapproving certain signs, thus giving them the power to regulate signs by their content. "[A] law cannot condition the free exercise of First Amendment rights on the 'unbridled discretion' of government officials." Gaudiya Vaishnava Soc'y v. City and Cnty. of San Francisco, 952 F.2d 1059, 1065 (9th Cir. 1990) (citing City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 755 (1988)); Young v. City of Simi Valley, 216 F.3d 807, 819 (9th Cir. 2000) ("When an approval process lacks

procedural safeguards or is completely discretionary, there is a danger that protected speech will be suppressed impermissibly because of the government official's . . . distaste for the content of the speech."). In the billboard context, a regulation that prohibits billboards unless a permit has been obtained is unconstitutional if "officials have unbridled discretion in determining whether a particular structure or sign will be harmful to the community's health, welfare, or 'aesthetic quality.'" See Moreno Valley, 103 F.3d at 819.

Plaintiffs argue that the Zoning Ordinance "contains numerous provisions allowing for signs to be constructed . . . anywhere . . . within the County's jurisdiction, if [they are] approved by one or more County instrumentalities or committees, each of which have [sic] unfettered discretion." Mot. at 3. Their argument involves two contentions. First, Plaintiffs contend that County officials can permit certain signs without any "substantive guidelines whatsoever." Id. at 6. That contention applies to four provisions of the Zoning Ordinance: (1) section 17.54.080, which allows County officials to permit a variance from "the strict terms of [the Zoning Ordinance]" if they determine that a variance is not detrimental to the "public welfare"; (2) section 17.52.520(R), which allows signs to be "placed on or attached to bus stop benches or transit shelters in the public right-of-way when approved by the director of the public works agency"; (3) section 17.52.520(D), which allows "[a]ny sign which has been determined by the historical landmarks committee for this county to have significant historical merit"; and (4) section 17.18.130, which allows the planning commission to grant a CUP for any non-conforming use in a PD district if, in its opinion, a CUP does not "materially change the provisions of the approved land use and development plan." See id. at 6, 8-10. Second, Plaintiffs contend that none of these provisions have any "procedural guidelines to ensure that the officials' decisions will be rendered timely." See id. at 6, 9. Remarkably, the County does not address Plaintiffs' discretion argument at all in its Opposition. See generally Opp'n.[10] As discussed below, the Court finds that Plaintiffs are likely to succeed on this argument.

---

[10] The County dedicated a significant amount of its briefing to the power of local governments to administer zoning laws. See Opp'n at 7-9.

13

### a. The Variance Provision, by Its Terms, Does Not Give County Officials Unfettered Discretion to Grant or Deny Variances for Some Signs

Plaintiffs' contention that the variance provision at section 17.54.080 gives officials unfettered discretion to approve or disapprove "any size sign with any content of speech" is incorrect. See Mot. at 8. Although section 17.54.080 allows "the strict terms of [the Zoning Ordinance]" to be varied, variances relating to "principal uses" are not permitted. See Zoning Ordinance § 17.54.080. The Zoning Ordinance defines "principal use" as "a use permitted, excluded, conditioned, or allowed to continue as a nonconforming use by [the Zoning Ordinance], as distinguished from an auxiliary or subordinate use permitted only when accessory to another use lawfully occupying the same lot or building site." Id. § 17.04.010. Additionally, variances are only permitted upon factual findings that a parcel's "size, shape, topography, location or surroundings" deprive the property of privileges enjoyed by nearby parcels in the same zoning classification. Id. § 17.54.080(A). Thus, the Court interprets the variance provision to allow area variances only. See 2 Am. Law. Zoning § 13:6 ("Unlike a use variance . . . area variances relate to deviations from the requirements . . . that relate to dimensional or physical restrictions on land use."). Section 17.54.080 does not allow use variances that would permit new billboards where they would otherwise be banned. Zoning Ordinance §17.54.080; see 2 Am. Law. Zoning § 13:5 ("A use variance, as the term implies, permits a use of land that is otherwise proscribed by the zoning regulation."). Accordingly, section 17.54.080, by its terms, does not allow government officials to regulate speech based on its content. See Gaudiya Vaishnava Soc'y, 952 F.2d at 1065. However, as explained below, there is a danger that County officials will stifle some speech simply because there are no procedural guidelines requiring the County to approve or disapprove section 17.54.080 variances in a timely manner. See infra III(C)(3)(d).

### b. The Public Works Agency and Historical Landmarks Commission Have Unfettered Discretion to Approve or Disapprove Signs

Section 17.52.520(R) allows signs to be "placed on or attached to bus stop benches or transit shelters in the public right-of-way when approved by the director of the public works

United States District Court
For the Northern District of California

agency." Zoning Ordinance § 17.52.520(R) (emphasis added). Similarly, section 17.52.520(D) allows "[a]ny sign which has been <u>determined by the historical landmarks committee</u> for this county to have significant historical merit." <u>Id.</u> § 17.52.520(D) (emphasis added). On their face, these provisions have no guidelines and give County officials unlimited discretion to pick and choose which signs will be approved. The County fails to respond and, thus, has not pointed to any provision that guides or limits the discretion of either the director of the public works agency or the historical landmarks committee. <u>See generally</u> Opp'n. The Court finds that, under the Zoning Ordinance, County officials could allow some speech and suppress other speech based entirely on content. <u>See</u> <u>Young</u>, 216 F.3d at 819.

    **c. The Planning Commission Has Unfettered Discretion to Grant or Deny Conditional Use Permits for Non-Conforming Uses in PD Districts**

Additionally, the Zoning Ordinance provides that "any use of land" within the boundaries of a PD district must "conform to the approved land use and development plan." Zoning Ordinance § 17.18.120. However, the planning commission can permit any non-conforming use, subject to a CUP, if in the planning commission's opinion, a CUP would not "materially change the provisions of the approved land use and development plan." <u>Id.</u> § 17.18.130. The Zoning Ordinance, as represented by the parties' requests for judicial notice, does not contain any information about the "approved land use and development plan" or any substantive guidelines that explain what would amount to a material change from that plan.

Plaintiffs argue that underlying the planning commission's discretion lies another hurdle: discretion to grant a CUP, as provided in sections 17.54.130 and 17.54.13. Mot. at 10. Plaintiffs do not provide the Court with a copy of those sections. <u>See</u> Pls' RJN. Even without looking to those provisions, however, the Court finds that County officials have unfettered discretion to decide if a CUP would "materially change the provisions of the approved land use and development plan." <u>See</u> Zoning Ordinance § 17.18.130. The County fails to respond and thus has not identified any provision of the Zoning Ordinance that guides

15

1 the decisions or limits the discretion of the planning commission to grant CUPs for land uses
2 in PD districts. See generally Opp'n. The Court finds that, under the Zoning Ordinance,
3 County officials are free to allow some speech and suppress other speech based entirely on
4 content. See Young, 216 F.3d at 819.

### d. There Are No Procedural Safeguards to Ensure that the County Will Make Its Discretionary Decisions in a Timely Manner

Furthermore, all four of these above provisions, including the area variance provision at section 17.54.080, lack any procedural safeguards to ensure that the County will make its discretionary decisions in a timely manner. See Zoning Ordinance §§ 17.54.080, 17.52.520(D), 17.52.520(R), 17.18.130; Young, 216 F.3d at 819  (approval process regulating speech must specify a reasonable time period in which a decision must be made). The County failed to address this issue in its Opposition and, thus, has not identified any provision of the Zoning Ordinance that requires the County to make these decisions within a specific time frame.

The County has not responded to any of these points, except for its argument at the hearing that the substitution clause at 17.52.515(C) makes it clear that the Zoning Ordinance does not regulate content. The Court is unpersuaded by this argument because that substitution provision only relates generally to the content of billboards and advertising signs. See Zoning Ordinance § 17.52.515(C). The provisions that Plaintiffs challenge on the basis of unfettered discretion relate to (1) the County's authority to approve or disapprove other "permitted" signs that are not necessarily billboards, and (2) the County's authority to vary its own regulations in PD districts. Even if the County generally permits billboard owners to replace an on-site commercial message with a noncommercial message, County officials still have the ability to impose their own tastes on speech by deciding, for example, what signs have "significant historical merit" or what land uses will not "materially alter" the provisions of the land use and development plan. See Zoning Ordinance §§ 17.18.130, 17.52.520(D). And because there are no time limits for discretionary decisions, County officials have the ability to give special treatment to some speech and to stifle other speech.

1 See id. §§ 17.54.080, 17.52.520(D), 17.52.520(R) 17.18.130.  For these reasons, the Court
2 finds that Plaintiffs are likely to succeed on the merits of their third argument.

### C. Likelihood of Irreparable Injury

Because Plaintiffs are likely to succeed on the merits of their third argument, the Court finds that they are also likely to suffer irreparable injury if a preliminary injunction is not issued.  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  S.O.C., 152 F.3d at 1148 (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)).

The County argues that there is no chance of irreparable injury because "plaintiffs have not presented any evidence . . . that they, as opposed to purchasers of their billboard space," will have their First Amendment rights abridged.  Opp'n at 12 (emphasis in original).  The County cites no legal authority in support of this position.  See id. at 12-13.  Also, "[v]endors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of the rights of third parties who seek access to their market or function."  See Kaahumanu v. Hawaii, 682 F.3d 789, 797 (9th Cir. 2012) (citing Craig v. Boren, 429 U.S. 190, 195 (1976)).

The County further argues that Plaintiffs will suffer no irreparable injury because they have alternative means of expression—renting space from any of the legally permitted billboards in the County.  Id. at 13.  The County's cited cases discuss alternative means of expression in the context of the whether a constitutional challenge is meritorious, not whether enforcement of the regulation is likely to cause irreparable injury.  See Opp'n at 13 (citing Reed v. Town of Gilbert ("Reed II"), 707 F.3d 1057, 1063-64 (9th Cir. 2013); Reed v. Town of Gilbert ("Reed I"), 587 F.3d 966, 980 (9th Cir. 2009); G.K. Ltd Travel v. City of Lake Oswego, 436 F.3d 1064, 1074 (9th Cir. 2006); Bland v. Fessler, 88 F.3d 729, 736 (9th Cir. 1996)).  Because infringement of First Amendment freedoms is an irreparable injury, Plaintiffs will be irreparably injured if the County is allowed to enforce the Zoning Ordinance.  See S.O.C., 152 F.3d at 1148.

### D. Balance of Hardships

The County argues that the "only 'hardship' that Plaintiffs may experience as a result of the need to remove the billboards is the cost of removal and the loss of potential revenue." Opp'n at 13-14. The County also characterizes its own potential hardships as "substantial," arguing that every person who passes the Parcel will be subjected to an "assault on their visual senses," and that an injunction would "jeopardize the enforcement of the entire program." Id. at 14. Plaintiffs contend that they stand to lose their constitutionally protected speech rights and might be subjected to monetary fines. Mot. at 13. The Court finds that, while an injunction would no doubt inconvenience the County, the potential loss of a constitutionally protected right places a greater hardship on Plaintiffs, especially where the County's interest is in enforcing an ordinance that is likely to be constitutionally invalid.

### E. Public Interest

The public interest favors granting a preliminary injunction here because Plaintiffs bring a facial challenge to the Zoning Ordinance and are likely to succeed on the merits of that claim. See League of Wilderness Defenders/Blue Mts. Biodiversity Project v. Connaughton, 752 F.3d 755, 766 ("The public interest inquiry primarily addresses impact on non-parties rather than parties."). The County fails to make an argument as to public interest, see Opp'n at 6-14, and the Court finds in Plaintiffs' favor on this final factor.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs are likely to succeed only on the merits of their third argument—that the Zoning Ordinance is facially invalid because it gives certain County officials unfettered discretion to allow variances or to permit other signs that have certain types of content. Because they claim a violation of their First Amendment rights, Plaintiffs stand to be irreparably injured if an injunction is not ordered. The balance of hardships also tips in their favor. Finally, because Plaintiffs argue that the Zoning Ordinance is facially invalid, the public interest weighs in favor of a preliminary injunction. Therefore, Plaintiffs' Motion for Preliminary Injunction is GRANTED.

Each party is ORDERED to submit within seven (7) days of this Order a proposed

preliminary injunction consistent with this Order and not exceeding three (3) pages.  The proposed injunctions shall not require a bond.  See Stipulation at 2 (the County waived any bond requirement).

**IT IS SO ORDERED.**

Dated: August 5, 2014

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE