United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CITIZENS FOR FREE SPEECH, LLC, ET AL.,

          Plaintiffs,

  v.

COUNTY OF ALAMEDA,

          Defendant.

_____/

No. C14-02513 CRB

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Citizens for Free Speech, LLC ("Citizens") and Michael Shaw ("Shaw") (collectively, "Plaintiffs") brought suit against Defendant County of Alameda (the "County"), alleging that the County's regulation of billboards and advertising signs is unconstitutional.[1]  See generally Compl.  Plaintiffs previously obtained a preliminary injunction in this case to prevent the County from enforcing Title 17 of the Alameda County General Ordinance Code (the "Zoning Ordinance") against Plaintiffs.  See Citizens for Free Speech, LLC v. Cnty. of Alameda, 62 F. Supp. 3d 1129 (N.D. Cal. 2014).

---

[1]  Plaintiffs assert four claims, for (1) violation of their rights to free speech under the First Amendment; (2) violation of their rights to equal protection under the Fourteenth Amendment; (3) violation of their rights to free speech under Art. I, § 2 of the California Constitution; and (4) violation of their rights to equal protection under Art. I, § 7 of the California Constitution. Compl. (dkt. 1) ¶¶ 34–39, 43–48.  Because Plaintiffs' fifth claim is merely a request for attorneys' fees pursuant to 42 U.S.C. § 1988, id. ¶¶ 40–42, the Court does not consider it a separate claim for purposes of the motion.

United States District Court
For the Northern District of California

1    The County now moves for summary judgment on several grounds, arguing that

2    Plaintiffs' as-applied and facial challenges to the Zoning Ordinance both fail.[2]  See Mot. at 2.

3    For the reasons discussed below, the Court GRANTS summary judgment as to Plaintiffs'

4    free speech claims, to the extent that those claims are based on: (1) an as-applied challenge;

5    (2) a facial challenge as to the unfettered discretion granted by Zoning

6    Ordinance §§ 17.52.520(Q), 17.52.520(D),[3] and 17.54.130; and (3) a facial challenge as to

7    Section 17.52.515's purported regulation of speech based on its content.  The Court DENIES

8    the motion as to Plaintiffs' facial challenge to Zoning Ordinance § 17.18.130 and as to

9    Plaintiffs' equal protection claims.[4]

10   **I.     BACKGROUND**

11   The Zoning Ordinance divides the County's unincorporated territory into twenty-five

12   different types of district, within which only certain buildings, structures, or land uses are

13   permitted.  Zoning Ordinance § 17.02.050.  Shaw owns a parcel of land located at 8555

14   Dublin Canyon Road (the "Parcel") in the County.  Shaw Decl. (dkt. 65-1) ¶ 2.  The Parcel is

15   located in an area zoned as a Planned Development ("PD") district.  Id.  Since January 2012,

16   Shaw has maintained a single on-site sign that advertises for his company, Lockaway

17   Storage.  Id. ¶¶ 3–4.

18   Shaw and Citizens entered into an agreement with each other that provides for the

19   construction and display of three additional signs (the "Signs") on the Parcel.  Herson Decl.

20   (dkt. 64-2) ¶¶ 2–3.  They agreed to share in the proceeds earned from displaying the Signs.

21

22   [2]  The County does not identify the specific claims on which it is seeking summary judgment,
     at it is required to do.  See Fed. R. Civ. P. 56(a) (party moving for summary judgment must "identify[ ]
23   each claim or defense . . . on which summary judgment is sought").  It appears to request summary
     judgment on all of Plaintiffs' claims.  See Mot. (dkt. 55) at 1.  Accordingly, the Court interprets the
24   motion as seeking summary judgment on all of Plaintiffs' claims.

25   [3]  As discussed infra in Section III(A)(2)(a)(i), the version of Section 17.52.520(D) that Plaintiffs
     challenge no longer exists.

26   [4]  Plaintiffs also request partial summary judgment on their free speech claims pursuant to Fed.
     R. Civ. P. 56(f)(1).  Opp'n (dkt. 63) at 25.  To the extent that those claims remain following this motion,
27   the Court does not grant this request.  In addition to its being procedurally improper, Plaintiffs might
     have created a genuine issue of material fact sufficient to defeat summary judgment on some of their
28   claims, but they have not shown an absence of a genuine issue of material fact in their favor on those
     claims.

United States District Court
For the Northern District of California

Shaw Decl. ¶ 7; Herson Decl. ¶ 2.  The Signs currently consist entirely of non-commercial messages, but Plaintiffs claim that the Signs will contain commercial messages in the future. Herson Decl. ¶ 3, Ex. E; Compl ¶ 12.

A County official visited the Parcel on June 9, 2014 to inform Shaw that the Signs were prohibited.  Shaw Decl. ¶ 4.  On June 10, 2014, the County mailed Shaw a "Declaration of Public Nuisance – Notice to Abate," claiming that the Signs violated Zoning Ordinance §§ 17.18.010 and 17.18.120.  Id. ¶¶ 5–6, Ex. C.  The Notice to Abate instructed Shaw to remove the Signs or face an abatement proceeding and an escalating schedule of fines.  Id., Ex. C.

Plaintiffs sued and moved for a temporary restraining order against the County to stop the abatement proceedings and impending fines.  Pls.' Mot. for Temp. Restraining Order (dkt. 11).  The Court subsequently granted Plaintiffs a preliminary injunction, finding that they were likely to succeed on the merits of their arguments that the Zoning Ordinance was facially invalid because it (1) gave County officials unfettered discretion to make certain determinations regarding signs and (2) failed to ensure that those decisions would be made in a timely manner.  See Citizens for Free Speech, 62 F. Supp. 2d at 1140–42.  Following discovery, the County now moves for summary judgment.

## II.   LEGAL STANDARD

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, affidavits or declarations, or other materials show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c)(1)(A).  This occurs where either the materials cited do not establish the absence or presence of a genuine dispute, or the nonmoving party cannot produce admissible evidence to support a fact.  Id. 56(c)(1)(B).  An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).  A principal purpose of the summary judgment procedure "is to isolate and dispose of factually

**United States District Court**
For the Northern District of California

1  unsupported claims . . . ."  Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).  "Where

2  the record taken as a whole could not lead a rational trier of fact to find for the non-moving

3  party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

4  475 U.S. 574, 587 (1986) (internal quotations omitted).

5      A party seeking summary judgment always bears the initial burden of establishing the

6  absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.  If the moving

7  party satisfies its initial burden, the nonmoving party cannot defeat summary judgment

8  merely by demonstrating "that there is some metaphysical doubt as to the material facts."

9  Matsushita, 475 U.S. at 586; see also Anderson, 477 U.S. at 252 ("The mere existence of a

10  scintilla of evidence in support of the [nonmoving party]'s position will be

11  insufficient . . . .").  Rather, the nonmoving party must go "beyond the pleadings and by her

12  own affidavits, or by the depositions, answers to interrogatories, and admissions on file,

13  designate specific facts showing there is a genuine issue for trial."  Celotex, 477 U.S. at 324

14  (internal quotations omitted).

15  **III.  DISCUSSION**

16      The County argues that summary judgment is warranted as to Plaintiffs' free speech

17  claims for two reasons.  First, the County contends that Plaintiffs' as-applied challenge fails

18  because Plaintiffs cannot identify any Zoning Ordinance provision that was improperly

19  applied to them.  See Memo. (dkt. 59) at 6–11.  Second, the County asserts that Plaintiffs'

20  facial challenge fails because (1) the Zoning Ordinance does not give County officials

21  unfettered discretion to make permitting decisions, and (2) Section 17.52.515 is a content-

22  neutral speech restriction that passes intermediate scrutiny.  See id. at 12–21; Reply (dkt. 66)

23  at 10–12.  The County also reasons that Plaintiffs' equal protection claims fail because the

24  evidence does not indicate that Plaintiffs were treated differently than any similarly-situated

25  parties.  See Reply at 12–13.  The Court addresses these arguments in order below.

26      **A.  Free Speech Claims**

27          **1.  Plaintiffs' As-Applied Challenge**

28      The County makes two arguments in support of summary judgment on Plaintiffs' as-

United States District Court
For the Northern District of California

applied challenge. First, it argues persuasively that the Zoning Ordinance provisions under which the County required Plaintiffs to remove their Signs do not even implicate Plaintiffs' constitutional rights to free speech, since those provisions only examine whether a particular use of land in a PD district conforms with the specific land use and development plan for the land on which the use occurs. See Memo. at 6–7. Second, the County argues unpersuasively that Plaintiffs' intention to display commercial messages on the Signs in the future would have allowed the County to properly regulate that speech under Zoning Ordinance § 17.52.515. Id. at 7–11.[5]

"An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998). Such challenge "does not implicate the enforcement of the law against third parties," but instead "argue[s] that discriminatory enforcement of a speech restriction amounts to viewpoint discrimination in violation of the First Amendment." Id. For that reason, a successful as-applied challenge "does not render the law itself invalid but only the particular application of the law." Id.

The County asserts that the Zoning Ordinance is constitutional as applied to Plaintiffs, since the County sought to remove the Signs "without regard to any issue of content . . . ." Id. at 6. The parties do not dispute that the Notice to Abate stated that the County's basis for enforcing the Zoning Ordinance as to the Signs was Plaintiffs' violation of Zoning

---

[5] Even assuming arguendo that the Court should analyze this speculative as-applied challenge, the County's broad interpretation of Section 17.52.515 fails. The Zoning Ordinance defines billboard as "a permanent structure or sign used for the display of offsite commercial messages . . . ." Zoning Ordinance § 17.52.515(A) (emphasis added). The County argues that this provision prevents construction of signs currently displaying commercial messages as well as "signs displaying noncommercial messages when constructed, but which are intended by the owner to also display commercial messages . . . ." Memo. at 8. But courts generally must look at the text of the statute to "'determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" Royal Foods Co. v. RJR Holdings, Inc., 252 F.3d 1102, 1106 (9th Cir. 2001) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997)). Section 17.52.515 does not include any reference to the future intentions of parties using the signs, and a logical understanding of "used" would preclude speech that might be displayed at some indeterminate point in the future.

5

United States District Court
For the Northern District of California

1  Ordinance §§ 17.18.010[6] and 17.18.120.  Id.; Shaw Decl., Ex. C.  Section 17.18.120 provides

2  that "[a]ny use of land within the boundaries of a [PD] district adopted in accordance with

3  the provisions of this chapter shall conform to the approved land use and development plan."

4  Zoning Ordinance § 17.18.120.

5       The Parcel was originally rezoned into a PD district in 1989, and an accompanying

6  land use and development plan (the "Plan") was also adopted at that time.  See Def.'s

7  Request for Judicial Notice (dkt. 60) ("Def.'s Second RJN"), Ex. A (dkt. 60-1) at 1.  The

8  signage that could be built on the Parcel was limited to "one non-electrical unlighted sign

9  with maximum dimensions of two feet by twenty-four feet," and was required to "be

10  approved through Zoning approval."  Id.  The Parcel's owner obtained a conditional use

11  permit ("CUP") for uses of the Parcel in 1990, 1994, 1997, 1999, 2005, 2011, and 2012, but

12  none of those CUPs provided for the construction of additional signage on the Parcel.  See

13  id., Exs. B–P (dkts. 60-2 to 60-14).  Plaintiffs do not argue that the Signs are small enough to

14  be acceptable under the Plan, or that Plaintiffs sought approval prior to building the signs.

15  See generally Opp'n; Herson Decl.; Shaw Decl.

16       Plaintiffs do not contest any of the material facts regarding the substance of the Plan

17  discussed above, nor do they argue that the County improperly applied Sections 17.18.010

18  and 17.18.120 to them.  They only state that the County's arguments fail "because the

19  County expressly prohibited Citizens' speech pursuant to the PD [d]istrict provisions of the

20

21       [6] Section 17.18.010 states that the purpose of the PD districts is "to encourage the arrangement of a compatible variety of uses . . . in such a manner that the resulting development will":

22       A. Be in accord with the policies of the general plan of the [C]ounty;

23       B. Provide efficient use of the land that includes preservation of significant open areas and natural and topographic landscape features with minimum alteration of natural land forms;

24

25       C. Provide an environment that will encourage the use of common open areas for neighborhood or community activities and other amenities;

26       D. Be compatible with and enhance the development of the general area;

27       E. Create an attractive, efficient and safe environment.

28                                        6

United States District Court
For the Northern District of California

[Zoning] Ordinance, which set forth an unconstitutional prior restraint on speech." Opp'n at 2. Plaintiffs are arguing, in essence, that because the Zoning Ordinance is <u>facially</u> unconstitutional as a prior restraint on speech, it is also unconstitutional as applied to them. But an "as-applied challenge goes to the nature of the <u>application</u> rather than the nature of the law itself," <u>Desert Outdoor Adver., Inc. v. City of Oakland</u>, 506 F.3d 798, 805 (9th Cir. 2007) (emphasis added), so whether the Zoning Ordinance is facially unconstitutional is not relevant to the question of whether it is unconstitutional as applied to Plaintiffs. Here, the County has presented substantial evidence that Zoning Ordinances §§ 17.18.010 and 17.18.120 did apply to Plaintiffs' Signs, and that the Plan precluded Plaintiffs from building the Signs on the Parcel. Plaintiffs have failed to rebut the County's evidence or provide any evidence indicating that those provisions were unconstitutionally applied to them. Accordingly, the Court grants summary judgment on both free speech claims to the extent Plaintiffs bring an as-applied challenge to those provisions.

### 2.   Plaintiffs' Facial Challenge

The County next argues that Plaintiffs' facial challenges to the Zoning Ordinance lack merit. "Although facial challenges to legislation are generally disfavored, they have been permitted in the First Amendment context where the licensing scheme vests unbridled discretion in the decisionmaker and where the regulation is challenged as overbroad." <u>FW/PBS, Inc. v. City of Dallas</u>, 493 U.S. 215, 223 (1990). This Court has previously recognized that both of Plaintiffs' arguments "are best characterized as 'overbreadth' challenges." <u>Citizens for Free Speech</u>, 62 F. Supp. 3d at 1134; <u>see also</u> <u>United States v. Linick</u>, 195 F.3d 538, 542 (9th Cir. 1999) (considering overbroad regulations that vested officials with unbridled discretion to deny expressive activity); <u>S.O.C., Inc. v. Cnty. of Clark</u>, 152 F.3d 1136, 1144 (9th Cir. 1998) (finding overbroad an ordinance that improperly restricted protected noncommercial speech). Under this type of challenge, Plaintiffs can establish the unconstitutionality of provisions of the Zoning Ordinance not applied to Plaintiffs by "showing that [those provisions] may inhibit the First Amendment rights of

7

United States District Court
For the Northern District of California

1  individuals who are not before the court." See 4805 Convoy, Inc. v. City of San Diego, 183

2  F.3d 1108, 1112 (9th Cir. 1999).

3      The County advances two arguments in support of summary judgment on the facial

4  challenge.  First, the County asserts that County officials do not have unfettered discretion in

5  applying the Zoning Ordinance, because the criteria guiding those officials' decisions are

6  limited and objective, subject to thorough review, and made within a reasonable period.

7  Memo. at 12–21.  Second, the County contends that Zoning Ordinance § 17.52.515 passes

8  intermediate scrutiny.  Reply at 10–11.  For the reasons discussed below, the Court grants in

9  part and denies in part summary judgment on Plaintiffs' unfettered discretion claim, and

10  grants summary judgment on Plaintiffs' Section 17.52.515 claim.

11              **a.      County Officials' Discretion in Permitting Decisions**

12      The County's first argument with respect to the facial challenge is that the provisions

13  of the Zoning Ordinance challenged by Plaintiffs do not give County officials unfettered

14  discretion to make decisions.  "[A] law cannot condition the free exercise of First

15  Amendment rights on the 'unbridled discretion' of government officials."  Gaudiya

16  Vaishnava Soc'y v. City and Cnty. of S.F., 952 F.2d 1059, 1065 (9th Cir. 1990) (quoting

17  City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 755 (1988)); Young v. City of

18  Simi Valley, 216 F.3d 807, 819 (9th Cir. 2000) ("When an approval process lacks procedural

19  safeguards or is completely discretionary, there is a danger that protected speech will be

20  suppressed impermissibly because of the government official's . . . distaste for the content of

21  the speech.").

22      To determine if an ordinance confers "unbridled discretion" on an official with respect

23  to a permitting process, a court must examine whether such ordinance "'contain[s] adequate

24  standards to guide the official's decision and render it subject to effective judicial review.'"

25  Seattle Affiliate of Oct. 22nd Coal. to Stop Police Brutality, Repression and Criminalization

26  of a Generation v. City of Seattle, 550 F.3d 788, 798 (9th Cir. 2008) (quoting Thomas v. Chi.

27  Park Dist., 534 U.S. 316, 323 (2002)).  The Ninth Circuit has articulated three factors courts

28

United States District Court
For the Northern District of California

must consider in analyzing the facial validity of a permitting process: (1) whether limited and objective criteria sufficiently confine the permitting officials' discretion to grant or deny a permit; (2) whether officials are required to state the reasons for a permitting decision, so as to facilitate effective judicial review; and (3) whether such decision must be made within a reasonable time frame. See City of Oakland, 506 F.3d at 806–07 (citing G.K. Ltd. Travel v. City of Lake Oswego, 436 F.3d 1064, 1082–83 (9th Cir. 2006)). "None of these factors is itself necessarily determinative of whether a statute confers excess discretion." Seattle Affiliate, 550 F.3d at 799. Instead, courts must "look to the totality of the factors . . . ." Id.

The County argues that the provisions Plaintiffs challenge all contain sufficient "standards or guidelines to limit County zoning officials' discretion in making decisions regarding certain uses of property." Memo. at 12. The Court previously held that Plaintiffs were likely to succeed on the merits of their argument that certain sections of the Zoning Ordinance granted County officials unfettered discretion: (1) Section 17.52.520(Q),[7] which concerns signs to be placed on bus stop benches or transit shelters, and Section 17.52.520(D),[8] which allowed for display of signs with historical merit; and (2) Section 17.18.130, which allows the planning commission to grant a CUP for any non-conforming use in a PD district if a CUP does not "materially change" the provisions of the approved land use and development plan. See Citizens for Free Speech, 62 F. Supp. 3d at 1140–42.[9] Plaintiffs also elaborate on a fourth challenge raised in their preliminary injunction motion, regarding Sections 17.54.130 and 17.54.135, which concern the process used to grant CUPs.

---

[7] The same provision existed as Section 17.52.520(R) at the time the Court decided Plaintiffs' preliminary injunction motion. See Citizens for Free Speech, 62 F. Supp. 3d at 1140. The County amended the Zoning Ordinance in November 2014, and this change affected the sections' numbering. See Def.'s Second RJN, Ex. S (dkt. 60-19).

[8] The amendment to the Zoning Ordinance in November 2014 deleted this section. See id.

[9] The Court also found that Plaintiffs were unlikely to succeed on the merits of their unfettered discretion argument as to another provision, Section 17.54.080, regarding permissible variances from the Zoning Ordinance. Citizens for Free Speech, 62 F. Supp. 3d at 1141. Given this holding, Plaintiffs concede that the provision is not at issue here, see Opp'n at 6 n.2, and the Court does not address it further.

United States District Court
For the Northern District of California

See Opp'n at 8–9.  This order addresses all four challenges below.

### i.      Sections 17.52.520(Q) and 17.52.520(D)

The County argues that Plaintiffs' challenges to Sections 17.52.520 (Q) and (D) are moot, since an amendment to the Zoning Ordinance has removed the discretionary elements. Memo. at 15.  Section 17.52.520(D), which previously permitted the display of signs determined by the historical landmarks committee to have historical merit, was deleted as part of the amendment.  Id.; Def.'s Second RJN, Ex. S.  The language of Section 17.52.520(Q) was amended to, among other things, remove the discretionary phrase "when approved by the director of the public works agency."  Memo. at 15; Def.'s Second RJN, Ex. S.  Plaintiffs apparently contend that the deletion of Section 17.52.520(D) does not moot their claim that unfettered discretion is available to the Historical Landmarks Commission, citing Outdoor Media Grp., Inc. v. City of Beaumont, 506 F.3d 895 (9th Cir. 2007) in support of this assertion.  Opp'n at 7.  Likewise, Plaintiffs argue without elaboration that "the amended [Zoning] Ordinance fails to resolve the 'bus stop' discretion wielded by County officials . . . ."  Id.

Neither of Plaintiffs' arguments is compelling.  As an initial matter, Outdoor Media recognized that the repeal of an ordinance can moot a claim for relief where "there is no longer any risk that [a party] will be subject to the challenged ordinance," such that there is no "live issue" for relief.  Outdoor Media, 506 F.3d at 901.  There is no live issue regarding the potential application of Section 17.52.520(D); because that provision no longer exists, it cannot be applied to the detriment of any party.  Furthermore, in Outdoor Media, the billboard company's claim for damages based on the facial invalidity of the ordinance prior to repeal was only sustained because the company might have suffered damages from application of the ordinance.  See id. at 906–07.  Plaintiffs have not presented any evidence that Section 17.52.520(D) was ever applied to them, so damages under Section 1983 are unavailable.  See Hunt v. City of L.A., 638 F.3d 703, 710 (9th Cir. 2011) (citing Outdoor Media, 506 F.3d at 907).  Accordingly, the deletion of Section 17.52.520(D) effectively

10

1   moots any facial challenge Plaintiffs assert regarding the discretion that provision granted

2   County officials.[10]

3       The same is true of Section 17.52.520(Q), which has no discretionary elements as

4   currently written.  That provision now permits "[s]igns placed on or attached to bus stop

5   benches or transit shelters in the public-right-of-way either sponsored by, or placed pursuant

6   to a contract with, AC Transit or another common carrier."  Zoning

7   Ordinance § 17.52.520(Q).  The existence of a sponsorship or contract is an objective matter

8   and does not involve any discretion on the part of County officials.  Consequently, the

9   guideline effectively eliminates County officials' discretion.

10      Because Plaintiffs cannot sustain their challenges to Sections 17.52.520(Q) or the

11  now-deleted 17.52.520(D), the Court grants summary judgment as to Plaintiffs' claim that

12  these provisions confer unfettered discretion.

13                          **ii.      Section 17.18.130**

14      The County next argues that Section 17.18.130 does not vest unfettered discretion in

15  County officials to decide whether a proposed structure or use constitutes a material change

16  to a land use and development plan.  Memo. at 17–18.  The County further asserts that

17  Section 17.18.130 does not vest officials with the power to grant or deny a permit at their

18  discretion, but only to determine whether a property owner must seek to implement the

19  proposed use through a CUP or an application for rezoning.  Id. at 17.  Plaintiffs argue that

20  nothing in the Zoning Ordinance limits County officials' discretion in deciding what

21  constitutes a material change under Section 17.18.130, but do not respond at all to the

22  County's second point.  See Opp'n at 8.

23      The Court does not accept either of the County's arguments.  In order to determine

24  whether a proposed use requires pursuit of a CUP or a change to the land use and

25  _____

26      [10] At the hearing, Plaintiffs' counsel claimed for the first time that despite the deletion of Section
    17.52.520(D), Section 17.52.520(C) still confers unfettered discretion on County officials to determine

27  what constitutes "a location of historic interest . . . ."  Zoning Ordinance § 17.52.520(C).  But Plaintiffs
    have not provided any evidence beyond those cursory remarks to show that that determination involves

28  the exercise of unfettered discretion.

United States District Court
For the Northern District of California

development plan, County officials must first decide whether that proposed use "materially change[s] the provisions of the approved land use and development plan" for the property in question.  Zoning Ordinance § 17.18.130.  "[M]aterially change" is not defined anywhere in Section 17.18.130, or in the definitions section of the Zoning Ordinance.  See Zoning Ordinance § 17.04.010.  The County argues that County officials can look at the definitions of "principal use," "use," "accessory use," and "accessory structure" for "[s]ignificant guidance as to what would or would not constitute a 'material change . . . .'"  Memo. at 18.  The County further asserts that "subsections B and C of §17.52.515 and §15.52.226 provide substantial guidance" as to the definition of material change if the proposed use involves a sign.  Id.  But the Zoning Ordinance does not direct County officials to consult these other terms or sections in order to determine if the proposed use constitutes a material change, and the County has not presented any evidence indicating that County officials actually do consult these suggested terms for guidance.[11]  Thus, there are no "narrow, objective, and definite standards" to guide officials here, because there are no standards whatsoever.  See Desert Outdoor Adver., Inc. v. City of Moreno Valley, 103 F.3d 814, 818 (9th Cir. 1996) (internal quotations omitted).

The County's contention that the discretion granted to its officials by Section 17.18.130 is essentially meaningless is also mistaken.  Even though County officials' decisions about whether there is a material change do not allow those officials to grant or deny permits, "the complete and explicit denial of any right to speak is not . . . the sine qua non of the right to bring a facial challenge."  See Seattle Affiliate, 550 F.3d at 796 n.4; see also Forsyth Cnty., Ga. v. Nationalist Movement, 505 U.S. 123, 133 (1992) (striking down a statute on a facial challenge where "[n]othing in the law or its application prevents the official from encouraging some views and discouraging others through arbitrary application

---

[11]  This practice would need to rise to the level of a "well-established practice" for the purposes of an unbridled discretion analysis.  See Seattle Affiliate, 553 F.3d at 799 (declining "to elevate any of the various decisional principles offered by [city] officials to the realm of 'well-established practice,' when no consistent set of factors was ever articulated") (quoting Plain Dealer, 486 U.S. at 770).

of fees").

The rezoning process appears to be significantly more intensive and time-consuming than the CUP process, and County officials can affect which process property owners must undergo by deciding, at their discretion, what constitutes a material change. If officials determine that a proposed use does not constitute a material change, then that use will be permitted "subject to securing a [CUP] . . . ." Zoning Ordinance § 17.18.130. The CUP application process requires submitting a written application with information about the proposed use to a municipal advisory council, which, after conducting a hearing and making an advisory recommendation, then submits it to a zoning board, which either adopts or denies the CUP. See Lopez Decl. (dkt. 57) at 3:23–4:4.[12] If, however, officials determine that a proposed use does constitute a "material change," then that use will only be permitted "if so indicated on a land use and development plan . . . ." Zoning Ordinance § 17.18.130. This process requires submission of a land use and development plan and application for rezoning. Memo. at 17. These documents are then submitted to a municipal advisory council, then to the planning commission, then to the board of supervisors, all of which hold public hearings and make advisory recommendations. Lopez Decl. at 2:16–3:5.[13] Planning staff must also create and release a public report prior to the Planning Commission's and Board of Supervisors' review of the submitted documents. Id. at 2:26–3:2. The discretion granted to County officials by Zoning Ordinance § 17.18.130 therefore potentially "allow[s] officials . . . to burden a group's speech differently depending on its message." See Seattle Affiliate, 550 F.3d at 796 n.4. The absence of any definite standards as to the meaning of

---

[12] Plaintiffs object to this portion of the Lopez Declaration as opinion. Opp'n at 4. The Court denies this objection. The statements in lines 3:23–4:4 about the substance of the CUP process are admissible. Lopez has worked as the Planning Director for the County for seven years, so he appears to have firsthand knowledge of the CUP process, to which his statements in lines 3:23–4:4 pertain. Lopez Decl. at 1:23–24; see also Boyd v. City of Oakland, 458 F. Supp. 2d 1015, 1024 (N.D. Cal. 2006) (distinguishing matters "known to the declarant personally" from opinion).

[13] Plaintiffs object to this portion of the Lopez Declaration as opinion. Opp'n at 4. The Court denies this objection for the reasons stated in footnote 12.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    material change therefore presents serious constitutional concerns.

2           Unlike with Section 17.54.130, these concerns are not relieved by the availability of

3    thorough and timely review procedures.  The County has not identified any provision in the

4    Zoning Ordinance requiring the planning commission to state the basis upon which it

5    determines that a proposed use is a material change.  See generally Memo., Reply; Zoning

6    Ordinance § 17.18.130.  Consequently, even though an affected party can apparently appeal

7    that determination, see Zoning Ordinance § 17.54.670, it is unclear what the board of

8    supervisors could even review.  As a result, the Court denies summary judgment as to

9    Plaintiffs' facial challenge to Section 17.18.130, because the "totality of the factors"

10   indicates that County officials have unfettered discretion under that provision.  Seattle

11   Affiliate, 550 F.3d at 799.

12                        **iii.      Section 17.54.130**

13          The County finally argues that Section 17.54.130 provides adequate guidelines to

14   decide whether to grant or deny a CUP.  The planning commission must consider whether a

15   proposed CUP complies with Section 17.54.130, see Zoning Ordinance § 17.54.135,[14]  which

16   requires determinations of whether the proposed use:

17          A. Is required by the public need;

18          B. Will be properly related to other land uses and transportation and service
            facilities in the vicinity;

19

20          C. If permitted, will under all the circumstances and conditions of the
            particular case, materially affect adversely the health or safety of persons
21          residing or working in the vicinity, or be materially detrimental to the
            public welfare or injurious to property or improvements in the
22          neighborhood; and

23          _____

24          [14]  Although Plaintiffs' discussion of the CUP process centers on Section 17.54.135, see Opp'n
     at 9, the CUP process is normally governed by Section 17.54.140, which gives the relevant zoning board
25   the authority to rule on the CUP.  The presiding zoning board will only delegate authority to the
     planning commission pursuant to Section 17.54.135 in the event that the zoning board is unable to take
26   action on a CUP application. Zoning Ordinance § 17.54.140. For purposes of this motion, it does not
     appear that there is any difference between the deliberative processes of the planning commission and
     zoning board under Sections 17.54.135 and 17.54.140, respectively, so the Court considers the two
27   provisions in the same manner.

28                                              14

United States District Court
For the Northern District of California

D. Will be contrary to the specific intent clauses or performance standards established for the district, in which it is to be located.

Id. § 17.54.130(A)–(D).  The County contends that these standards are sufficiently specific to limit County officials' discretion.  Reply at 2–3.  Plaintiffs respond that these guidelines create "no limitation on what the commission may consider . . . ."  Opp'n at 9.  Plaintiffs further argue that the standards under Section 17.54.130 are "indistinguishable" from those held to confer unfettered discretion.  Id. at 10; see also Moreno Valley, 103 F.3d at 819.

The Court finds that standards in Section 17.54.130(A)–(D) lie somewhere in between those that other courts have deemed permissible and impermissible on the basis of discretion conferred.  On the one hand, Section 17.54.130's standards contain many of the same general terms that the Ninth Circuit held in Moreno Valley granted too much discretion.  Compare Moreno Valley, 103 F.3d at 818–19 (holding that ordinance conferred unbridled discretion where issuance of permit was subject to broad findings that proposed use "will not have a harmful effect upon the health or welfare of the general public and will not be detrimental to the welfare of the general public and will not be detrimental to the aesthetic quality of the community or the surrounding land uses") (emphasis added) with Zoning Ordinance § 17.54.130(C) (requiring consideration of whether proposed use will "materially affect adversely the health or safety of persons residing or working in the vicinity, or be materially detrimental to the public welfare or injurious to property or improvements in the neighborhood") (emphasis added).  Section 17.54.130's insertion of the modifier "materially" does not substantially change the generality of the phrases "affect adversely" and "detrimental to," which are practically identical to the discretionary terms in Moreno Valley.  Likewise, "injurious" is merely a synonym of "detrimental."  The County also fails to identify any other provisions in the Zoning Ordinance that provide guidance as to what "affect adversely," "detrimental to," or "injurious to" mean in the context of CUP review.  In addition to these flaws, the phrase "required by the public need" is equally vague and discretionary.  Section 17.54.130(A).  Thus, these standards might not be sufficiently

15

United States District Court
For the Northern District of California

"'narrow, objective, and definite . . . to guide the licensing authority . . . .'"  See Moreno Valley, 103 F.3d at 818 (quoting Shuttlesworth v. City of Birmingham, 394 U.S. 147, 150–51 (1969)).

Nonetheless, the County is correct that Section 17.54.130 differs in key respects from the Moreno Valley ordinance.  Whereas the Moreno Valley ordinance focused on the effects of proposed uses on the "general public," 103 F.3d at 818, Section 17.54.130 looks instead to the specific consequences of a proposed use "in the vicinity" or "in the neighborhood" of where the use will occur,  Zoning Ordinance § 17.54.130(B), (C).  These localizing phrases are not as explicit and definite as those upheld in G.K. Ltd. or City of Oakland.  See G.K. Ltd., 436 F.3d at 1083 (permitting decisions were subject to "reasonably specific size and type criteria" and considerations of compatibility "with the surrounding environment," both of which phrases were "explicitly defined" in the city's code); City of Oakland, 506 F.3d at 807 (variance decisions were based on "objective inquir[ies]" and specific criteria were defined in city ordinance).  But they are more narrowly tailored than those phrases upheld as providing adequate guidance in other prior restraint cases.  See, e.g., Thomas, 534 U.S. at 319 n.1 (officials' discretion adequately confined where city could deny permit to use park if proposed use "would present an unreasonable danger to the health or safety" of the public or park employees).  That the criteria in Section 17.54.130 are "somewhat elastic and require reasonable discretion to be exercised" by the planning commission in granting a CUP does not necessarily mean that the provision grants unfettered discretion.  See G.K. Ltd., 436 F.3d at 1084.

Even were the Court to find that Section 17.54.130 contains indefinite standards, this conclusion would not be "determinative of whether the provision confers excess discretion." Seattle Affiliate, 550 F.3d at 798.  Plaintiff contends that, under Moreno Valley, the presence of subjective criteria by itself makes Section 17.54.130 an unconstitutional prior restraint. See Opp'n at 10 (arguing that Moreno Valley "was clearly focused on the lack of objective criteria for decisions allowing or disallowing speech, not on ancillary procedural matters")

16

United States District Court
For the Northern District of California

1   (emphasis added).  But numerous cases contradict this assertion.  Courts must consider both

2   the criteria themselves <u>and</u> whether the permitting process effectively enables judicial

3   review.  <u>See, e.g.</u>, <u>Seattle Affiliate</u>, 550 F.3d at 799 (requiring consideration of "totality of

4   the factors" to determine if ordinance confers unfettered discretion, including whether

5   officials must provide explanation for decision and whether decision is reviewable); <u>Thomas</u>,

6   534 U.S. at 323 (court must examine whether permitting process "contain[s] adequate

7   standards to guide the official's decision <u>and</u> render it subject to effective judicial review")

8   (emphasis added); <u>G.K. Ltd.</u>, 436 F.3d at 1083 (considering time frame for officials'

9   decisions and requirement that officials justify their findings in discussing discretion granted

10  to officials).[15]

11          The Court finds that the review procedures for the CUP process appropriately limit the

12  discretion exercised by County officials pursuant to Zoning Ordinance § 17.54.130, for three

13  reasons.  First, CUP applications are subject to a thoroughly documented process.  Parties

14  seeking CUPs must submit a written application with information about the proposed use to a

15  municipal advisory council, which, after conducting a hearing and making an advisory

16  recommendation, then submits it to a zoning board, which either adopts or denies the CUP.

17  <u>See</u> Lopez Decl. at 3:23–4:4.  The relevant zoning board must state its findings in writing as

18  to the CUP's compliance with the standards in Section 17.54.130.  <u>Id.</u> at 4:5–12.[16]  That

19  County officials "must clearly explain [their] reasons" for their decisions regarding CUP

20

---

21          [15] At the hearing, Plaintiffs' counsel asserted that the standards in the <u>Moreno Valley</u> ordinance
    are more appropriate guidelines to judge the breadth of the discretion granted by Section 17.54.130 than
22  the criteria in other cases cited by the County because those cases were not concerned with permit
    applications involving billboards.  See, e.g., Seattle Affiliate, 550 F.3d at 800–01; Thomas, 534 U.S.
23  at 319 n.1.  But the Court may still rely on the permitting criteria discussed in those cases for guidance
    as to Section 17.54.130's standards, just as other cases have considered different types of permit
24  processes to determine the amount of discretion conferred.  See, e.g., Long Beach Area Peace Network
    v. City of Long Beach, 574 F.3d 1011, 1028 (9th Cir. 2008) (comparing standards for "special event"
25  permit process to standards in cases regarding permits to (1) place newsracks on public property and
    (2) gather in national forests) (citing <u>Plain Dealer</u>, 486 U.S. at 753–54 & <u>Linick</u>, 195 F.3d at 538).
26

          [16] Plaintiffs object to this portion of the Lopez Declaration as opinion.  Opp'n at 4.  The Court
27  denies this objection for the reasons stated in footnote 12.

28                                                    17

United States District Court
For the Northern District of California

applications substantially limits those officials' discretion. See Thomas, 534 U.S. at 324.

Second, affected parties can pursue multiple appeal procedures for any decision on a CUP application. "[A]ny property owner or other person aggrieved" by a decision under Section 17.54.140 can appeal that decision to the board of supervisors. Zoning Ordinance § 17.54.670. If a party is dissatisfied with the administrative appeal, the County further asserts, that party can file a writ of mandate to have a court review the administrative decision. Memo. at 14; see also Cal. Civ. Proc. Code § 1094.5(a). Plaintiffs argue that this type of judicial review is in fact unavailable given the legislative nature of the CUP application decision. Opp'n at 12. Although Plaintiffs concede that a party can still pursue traditional mandamus review under Cal. Civ. Proc. Code § 1085, they contend that this review is insufficient because the reviewing court cannot compel the County to issue a previously denied CUP. Id. But even assuming that the denial of a CUP is a legislative act subject to traditional mandamus review, Plaintiffs do not cite—and the Court cannot find—any authority holding that the inability of a reviewing court to reverse the denial of a permit requires a finding of unfettered discretion. In fact, any concern as to that limited reviewing power is mitigated by the alternate availability of administrative appeal under Section 17.54.670, which Plaintiffs do not address.

Third, challenged CUP application decisions are reviewed within a reasonable time frame. The Permit Streamlining Act, Cal. Gov't Code § 65920, et seq. ("PSA"), provides the requisite timeline for decisions on "development projects," mandating that the agency reviewing the development permit notify the applicant within thirty days if the development application is incomplete. Cal. Gov't Code § 65493. Once the application is complete, the reviewing agency must reach a decision within a specific amount of time, depending on whether an environmental impact report is required. Id. § 65950. Plaintiffs contend that the PSA does not apply to CUP applications, because CUPs seek certain "uses" of land, and the PSA only governs the "issuance of . . . permit[s] for construction or reconstruction." Opp'n at 13–14; see also Cal. Gov't Code § 65928. Plaintiffs further argue that an entirely different

18

United States District Court
For the Northern District of California

1 title of the Zoning Ordinance, unrelated to Section 17.54.130, deals with approval to build,

2 and so the PSA only applies to decisions under those sections. Opp'n at 14. But the plain

3 language of the Zoning Ordinance indicates that Section 17.54.130 does not govern uses

4 alone. Section 17.18.130 gives the planning commission authority to consider granting a

5 CUP, pursuant to Section 17.54.135, for any "proposed structure, facility, or land use"

6 related to an existing land use and development plan. Zoning Ordinance § 17.18.130

7 (emphasis added). The proposal of a "structure" or "facility" necessarily involves

8 "construction," which would subject those CUPs involving structures or facilities to the time

9 limits of the PSA.

10      Plaintiffs assert that even if the PSA applies to CUP applications, the minimum time

11 limit for completing the application process under the PSA—120 days—is too long. See

12 Opp'n at 15–16. At the hearing, the County's counsel responded that a longer time period

13 was necessary in light of the nature of the permitting process, which involves seeking

14 approval from various groups prior to making a final decision on a permit application. The

15 Court finds this argument compelling, and accordingly, considers the 120-day time period

16 under the PSA a reasonable time frame to confine the discretion granted by Section

17 17.54.130.[17]

18      Based on a review of the "totality of the factors" with respect to Section 17.54.130,

19 see Seattle Affiliate, 550 F.3d at 799, the Court grants summary judgment on Plaintiffs'

20 facial challenge as to that provision. Although the criteria used to grant or deny CUPs are

21 not as definite as in some other cases, any deficiencies are mitigated by the availability of

22

23      _____

      [17] Even assuming that the PSA does not apply to some or even any CUP applications, the
24 absence of a definite time period to grant or deny the CUP does not necessitate a finding of unfettered
   discretion. "That the [Zoning Ordinance] lack[s] a time limit for the processing of applications is not
25 fatal." Outdoor Sys., Inc. v. City of Mesa, 997 F.2d 604, 613 (9th Cir. 1993). The cases to the contrary
   cited by Plaintiffs all concern content-based speech restrictions. See City of Littleton, Colo. v. Z.J. Gifts
26 D-4, LLC, 541 U.S. 774 (2004); FW/PBS, 493 U.S. at 215; Teitel Film Corp. v. Cusack, 390 U.S. 139
   (1968); Freedman v. Maryland, 380 U.S. 51 (1965); Gospel Missions of Am. v. Bennett, 951 F. Supp.
27 1429 (C.D. Cal. 1997). But as discussed infra in Section III(A)(2)(b)(i), the Zoning Ordinance is
   content-neutral, and the same procedural requirements do not apply to content-neutral permit schemes.
28 See Thomas, 534 U.S. at 322.

19

United States District Court
For the Northern District of California

1  thorough documentation and review procedures.

2  **b.    Regulation of Speech Based on Content**

3     The County's second argument as to the facial challenge is that Section 17.52.515 is

4  not a content-based speech restriction, and that the provision passes intermediate scrutiny.

5  Reply at 10–12.  Section 17.52.515 provides that "[n]otwithstanding any other provision in

6  [the Zoning Ordinance], no person shall install, move, alter, expand, modify, replace or

7  otherwise maintain or operate any billboard[18] or advertising sign[19] in an unincorporated area

8  of Alameda County."  Zoning Ordinance § 17.52.515(A).  Plaintiffs contend that this

9  restriction qualifies as content-based under both the First Amendment and the California

10  Constitution.  Opp'n at 17–25.  The Court addresses those arguments separately below.

11  **i.    Federal Claim**

12     Plaintiffs argue that Section 17.52.515 improperly restricts speakers' First

13  Amendment free speech rights by regulating speech based on its content.  "[A]n ordinance is

14  invalid if it . . . regulates noncommercial billboards based on their content."  Nat'l Adver.

15  Co. v. City of Orange, 861 F.2d 246, 248 (9th Cir. 1988) (citing Metromedia, Inc. v. City of

16  San Diego, 453 U.S. 490, 513, 516 (1981)).

17     Plaintiffs do not argue that Section 17.52.515(A) by itself regulates noncommercial

18  billboards based on their content.  Nor could they—the plain language of that provision

19  limits its application to "permanent structure[s] or sign[s] used for the display of offsite

20  commercial messages . . . ."  Zoning Ordinance § 17.52.515(A) (emphasis added).  Instead,

21  Plaintiffs assert that because the Zoning Ordinance "includes content-based exemptions to an

22  otherwise content-neutral speech restriction, the restriction is itself content-based."  Opp'n at

23

24     [18]  "Billboard" is defined as "a permanent structure or sign used for the display of offsite commercial messages and shall include and be synonymous with 'advertising sign . . . .'"  Zoning Ordinance § 17.52.515(A).

25

26     [19]  "Advertising sign" is defined as "any lettered or pictorial matter or device which advertises or informs about a business organization or event, goods, products, services or uses, not available on

27  the property upon which the sign is located and does not include directional tract sign or community identification sign."  Id. § 17.04.010.

28

20

United States District Court
For the Northern District of California

17.[20]  Plaintiffs identify four types of signs referenced in Zoning Ordinance § 17.52.520, the provision describing the categories of permitted signs,[21] as "hav[ing] no content-neutral criteria"—Sections 17.52.520(A), (B), (C), and (Q)—and contend that the remaining categories "are subject to content-neutral criteria only if the signs display certain content." Opp'n at 18.

In arguing that these permitted signs are content-based "exemptions" that preclude summary judgment, Plaintiffs essentially ask the Court to overturn its prior holding on this issue.  The Court previously concluded that Section 17.52.515 does not regulate noncommercial speech at all.  See Citizens for Free Speech, 62 F. Supp. 3d at 1138. Accordingly, the permitted signs could not be "exemptions" to a noncommercial speech ban,[22] since "exceptions cannot exist without a corresponding general rule . . . ." Id.

Plaintiffs attempt to skirt this holding by contending that, even if Zoning Ordinance § 17.52.515 applies only to commercial speech, the reference to some permitted signs that are noncommercial in nature means that Section 17.52.515 must also apply to noncommercial speech "as a matter of statutory construction . . . ." Opp'n at 20.  But

_____

[20]  Plaintiffs also argue that Zoning Ordinance § 17.52.520(A), allowing signs by public officials, is itself unconstitutional because it is content-based and discriminates based on the speaker.  Opp'n at 19.  Because this argument is more appropriately discussed with respect to Plaintiffs' equal protection claims—which are considered infra in Section III(B)— the Court does not address it further in this section.

[21]  Permitted signs include, among others, the following:  sale or lease signs; official public signs; no trespass signs; warnings; house and mailbox identifiers; street names; signs identifying a benefactor; signs identifying a location of historic interest; signs identifying statues or monuments; pedestrian and traffic signs; temporary political signs; and announcements related to meetings held at schools, churches, or other places of public assembly.  Zoning Ordinance § 17.52.520.

[22]  Plaintiffs also request that the Court reconsider its earlier discussion regarding the blanket noncommercial nature of the permitted signs.  See Opp'n at 20 n.8; Citizens for Free Speech, 62 F. Supp. 3d at 1138.  Upon further review of Zoning Ordinance § 17.52.520, the Court observes that some of the permitted signs (for example, signs for apartment rentals and for sales, rentals, or leases of buildings or lots in subdivision developments) could be characterized as commercial in nature.  See Zoning Ordinance § 17.52.520(J), (K).  Nonetheless, their commercial nature does not change the Court's analysis, since regulation of commercial speech does not invalidate a billboard ordinance.  See, e.g., Nat'l Adver., 861 F.2d at 248 ("'[T]he city may distinguish between the relative value of different categories of commercial speech . . . .'") (quoting Metromedia, 453 U.S. at 514).

21

United States District Court
For the Northern District of California

1    Plaintiffs' reliance on <u>National Advertising</u> and <u>Metromedia</u> in support of this argument is

2    mistaken.  Those cases both involved ordinances that did not specifically identify the nature

3    of speech regulated.  <u>See</u> <u>Nat'l Adver.</u>, 861 F.2d at 247 (ordinance banned "general or

4    billboard advertising signs," defined as "signs which direct attention to a business,

5    commodity, industry or other activity which is sold, offered or conducted elsewhere than on

6    the premises upon which such sign is located, and which may be sold, offered or conducted

7    on such premises only incidentally, if at all") (quotation marks omitted); <u>Metromedia</u>, 453

8    U.S. at 493–94 (ordinance prohibited "outdoor advertising display signs," including any sign

9    that "directs attention to a product, service or activity, event, person, institution or business")

10   (quotation marks omitted).  As a result, those courts needed to confront the threshold issue of

11   whether those ordinances regulated noncommercial speech,[23] and <u>National Advertising</u> found

12   the noncommercial nature of the exemptions instructive in light of the facial ambiguity.  <u>See</u>

13   861 F.2d at 247.

14           Here, by contrast, the Zoning Ordinance's billboard ban is not ambiguous: it explicitly

15   regulates <u>only</u> commercial speech.  Section 17.52.515 bans "billboard[s]," which are signs

16   "used for the display of offsite <u>commercial</u> messages . . . ."  Zoning

17   Ordinance § 17.52.515(A) (emphasis added).  "Billboard" must be read as synonymous with

18   "advertising sign," <u>id.</u>, so even if the definition of "advertising sign" contains a

19   word—"uses"—that bears some similarity to the terms in <u>National Advertising</u> and

20   <u>Metromedia</u>, that word cannot encompass noncommercial speech, since such an

21   interpretation would make "advertising sign" <u>not</u> synonymous with "billboard."  The Court is

22   "'not required to . . . adopt an interpretation precluded by the plain language of the

23

---

24           [23] The other cases cited by Plaintiffs in which content-based noncommercial exemptions to an
     otherwise content-neutral sign ban made that provision content-based involved bans that explicitly
25   regulated <u>all</u> speech, including noncommercial speech.  <u>See</u> <u>Foti</u>, 146 F.3d at 634 (ordinance banned "<u>all</u>
     signs on <u>all</u> public property") (emphasis in original); <u>Moreno Valley</u>, 103 F.3d at 816 (ordinance
26   regulated all signs, which included both commercial and noncommercial messages).  As discussed
     below, Plaintiffs cannot show that same breadth in Section 17.52.515.

27

28                                                    22

United States District Court
For the Northern District of California

1   Ordinance.'" <u>S.O.C.</u>, 152 F.3d at 1144 (quoting <u>Foti</u>, 146 F.3d at 639–40).  Likewise, the

2   Court has a "duty to interpret [the Zoning Ordinance], if fairly possible, in a manner that

3   renders it constitutionally valid."  <u>Outdoor Sys.</u>, 997 F.2d at 611.  Plaintiffs have not

4   provided any additional evidence supporting its interpretation beyond the argument above,

5   which the Court has already rejected. Consequently, the Court is not inclined to change its

6   earlier holding regarding the scope of the billboard ban in the Zoning Ordinance.

7        Plaintiffs have alternatively argued, in both a supplemental filing and at the hearing,

8   that the Supreme Court's recent decision in <u>Reed v. Town of Gilbert</u>, 576 U.S. __, No.

9   13–502 (June 18, 2015) makes the exemptions in Section 17.52.520 content-based.  <u>See</u> Pls.'

10  Notice of Suppl. Authority (dkt. 68) at 1.  But the Court agrees with the County that <u>Reed</u> has

11  "no applicability to the issues before the Court . . . ."  Def.'s Reply to Pls.' Suppl. Filing (dkt.

12  69) at 1.  <u>Reed</u> was specifically concerned with a sign code's application of different

13  restrictions—including temporal and geographic restrictions—to permitted signs based on

14  their content.  <u>See</u> 576 U.S. at __ (slip op. at 12) ("Ideological messages are given more

15  favorable treatment than messages concerning a political candidate, which are themselves

16  given more favorable treatment than messages announcing an assembly of like-minded

17  individuals.  That is a paradigmatic example of content-based discrimination.").  Plaintiffs

18  have not identified any distinct temporal or geographic restrictions on different categories of

19  permitted signs in Section 17.52.520 based on those signs' content.  Consequently, <u>Reed</u>

20  does not apply here.

21       Because the Court follows its previous holding that Section 17.52.515 only applies to

22  commercial speech, the Court must examine that provision under intermediate scrutiny, not

23  strict scrutiny.  <u>See</u> <u>Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.</u>, 447

24  U.S. 557, 561, 564 (1980).  To survive intermediate scrutiny, an ordinance that restricts

25

26

27

28                                                    23

commercial speech that is not misleading and concerns lawful activity[24] must (1) seek to implement a substantial governmental interest; (2) directly advance that interest; and (3) reach no further than necessary to accomplish the given objective. See id. at 564; Moreno Valley, 103 F.3d at 819. The Zoning Ordinance meets this test.

First, the County has demonstrated that the billboard ban was enacted in order to implement a substantial government interest. The purpose of the ban is to "advance the County's interests in community aesthetics by the control of visual clutter, pedestrian and driver safety, and the protection of property values . . . ." Zoning Ordinance § 17.52.515(B)(1).[25] "The burden on the [County] of meeting the first prong of the Central Hudson test is not a great one." Moreno Valley, 103 F.3d at 819 n.2. Moreover, the goals of traffic safety and visual appearance have been consistently upheld as substantial government interests. See, e.g., Metromedia, 453 U.S. at 507–08; World Wide Rush, LLC v. City of L.A., 606 F.3d 676, 685 (9th Cir. 2010) ("[T]here is no question that restrictions on billboards advance cities' substantial interests in aesthetics and safety."). In any event, Plaintiffs do not appear to contest that the County has actually shown a substantial interest underlying the billboard restriction. See Opp'n at 22.

Second, Plaintiffs' contention that the County has not presented evidence in support of the assertion that Section 17.52.515 "actually advances its stated purpose to support its interests in aesthetics and safety" is inaccurate. Id. The Court may grant summary judgment on this issue in the County's favor "without detailed proof that the billboard regulation will

---

[24] Plaintiffs do not contend that the commercial speech restricted by Section 17.52.515 is misleading or does not concern lawful activity. See generally Opp'n.

[25] This purpose statement is not included in the version of the Zoning Ordinance attached to Plaintiffs' Request for Judicial Notice because, due to the publisher's error, Section 17.52.515(B)–(G) did not become part of the published version of the Zoning Ordinance. See Citizens for Free Speech, 62 F. Supp. 3d at 1135. But the Court took judicial notice of those subsections because the County properly published them pursuant to Cal. Gov. Code § 25124. Id. at 1136. Accordingly, the Court considers those provisions, which were attached as Exhibit A (dkt. 20-1) to the County's Request for Judicial Notice ("Def.'s First RJN") (dkt. 20) filed in opposition to Plaintiffs' motion for a preliminary injunction, in deciding this motion.

United States District Court
For the Northern District of California

in fact advance the [County]'s interests." <u>Ackerley Commc'ns of Nw. Inc. v. Krochalis</u>, 108 F.3d 1095, 1099–1100 (9th Cir. 1997). In <u>Metromedia</u>, despite a "meager record" reflecting the ordinance's advancement of its traffic safety goals, the Supreme Court affirmed that "'as a matter of law . . . an ordinance which eliminates billboards designed to be viewed from streets and highways reasonably relates to traffic safety.'" 453 U.S. at 508 (quoting <u>Metromedia, Inc. v. City of San Diego</u>, 610 P.2d 407, 412 (Cal. 1980) (en banc)). A similarly lenient standard exists for showing advancement of an interest in maintaining visual appearance by banning billboards, since that goal is "necessarily subjective . . . ." <u>Id.</u> at 510 ("It is not speculative to recognize that billboards by their very nature, wherever located and however constructed, can be perceived as an esthetic harm.") (internal quotations omitted).

In fact, the County has presented evidence that Section 17.52.515 advances the County's interests in traffic safety and aesthetics. The County sought to ban the construction of new billboards in response to concerns about "the proliferation of billboards in the unincorporated areas of the County," which were perceived "as a significant problem for visual blight in some areas . . . ." Dalton Decl. (dkt. 56) at 2:14–16,[26] 2:19–26. Other evidence provided by the County demonstrates that Section 17.52.515 was enacted to advance the County's interest in preventing "visual clutter . . . ." Def.'s First RJN, Ex. A. <u>Moreno Valley</u>, in which the ordinance did not even contain a statement of purpose, is inapposite here. <u>See</u> 103 F.3d at 819. <u>Metromedia</u> requires a minimal showing to satisfy this part of the intermediate scrutiny test, and the County meets it. <u>See</u> 453 U.S. at 508, 510. As

---

[26] Plaintiffs object to this portion of the Dalton Declaration as hearsay. Opp'n at 4. The Court denies this objection for two reasons. First, Plaintiffs' "attempt to assert th[is] objection[ ] without providing any individualized discussion is procedurally defective," because the objection itself is "unduly vague." <u>See</u> <u>Dukes v. Wal-Mart, Inc.</u>, 222 F.R.D. 189, 199 (N.D. Cal. 2004). Because the part of the declaration objected to contains multiple statements, it is impossible to tell which specific statements Plaintiffs consider hearsay. Second, the statement in lines 14–16 is admissible. Dalton worked with the Castro Valley Community Advisory Committee ("CAC") as part of her role at the County's Redevelopment Agency, so she appears to have firsthand knowledge of the CAC's actions, to which her statement in lines 14–16 pertains. Dalton Decl. at 2:10–13; <u>see also</u> <u>Boyd</u>, 458 F. Supp. 2d at 1024 (distinguishing matters "known to the declarant personally" from hearsay).

United States District Court
For the Northern District of California

1  a result, the Court finds that Section 17.52.515 actually advances the County's stated

2  interests.[27] [28]

3       Third, Section 17.52.515 does not go any further than necessary to maintain the

4  County's visual appearance and promote traffic safety.  This "element of the analysis does

5  not require that the regulation be the least-restrictive means to accomplish the government's

6  goal.  Rather, what is required is a reasonable fit between the ends and the means, a fit 'that

7  employs not necessarily the least restrictive means, but . . . a means narrowly tailored to

8  achieve the desired objective.'"  <u>Outdoor Sys., Inc.</u>, 997 F.2d at 611 (quoting <u>Bd. of Trs. of</u>

9  <u>State Univ. v. Fox</u>, 492 U.S. 469, 480 (1989)).

10      Notably, the ban does not affect all billboards, but only those displaying "offsite

11 commercial messages . . . ."  Zoning Ordinance § 17.52.515(A).  Furthermore, the relocation

12 provision exempts existing billboards from the ban, reflecting the County's interest in

13 addressing the specific problem of new billboards without significantly harming the owners

14 of existing billboards.  <u>Id.</u> § 17.52.515(A)(3); Dalton Decl. at 3:18–20 (discussing relocation

15 provision's goal of reducing impact on surrounding environment "without diminishing

16 [existing billboards'] economic value to the owners").  Other billboard bans with similar

17 exceptions have satisfied the third prong of the <u>Central Hudson</u> test.  <u>See, e.g.</u>, <u>Metromedia</u>,

18 453 U.S. at 508 (upholding ordinance in part because it "allow[ed] onsite advertising and

19 _____

20      [27]  Plaintiffs also cannot argue that the relocation exception in Section 17.52.515(A)(3), which
   permits owners of existing billboards to construct billboards in new locations, "'undermine[s] and
21 counteract[s]' the interest the government claims," such that the provision does not "'directly and
   materially advance'" those interests.  <u>See</u> <u>Metro Lights, L.L.C. v. City of L.A.</u>, 551 F.3d 898, 905 (9th
22 Cir. 2009) (quoting <u>Rubin v. Coors Brewing Co.</u>, 514 U.S. 476, 489 (1995)).  The relocation provision
   is entirely consistent with the County's interests in enacting the billboard ban: "mov[ing] billboards to
23 more appropriate locations and reduc[ing] the overall number of billboards in the community."  <u>See</u>
   Dalton Decl. at 4:1–2 (see footnote 28 regarding Plaintiffs' objection to this statement).  The relocation
24 provision does not undermine the County's interests as expressed in Zoning Ordinance § 17.52.515(B).
   <u>See World Wide Rush</u>, 606 F.3d at 685 (exceptions did not undermine interests where exceptions were
25 "made for the express purpose of advancing those very interests").

26      [28]  Plaintiffs object to this portion of the Dalton Declaration as irrelevant.  Opp'n at 4.  Because
   this statement is relevant to understanding the purpose of the relocation provision with respect to the
27 broader interests of Section 17.52.515, the Court denies this objection.

28                                        26

United States District Court
For the Northern District of California

1  some other specifically exempted signs"); <u>Nat'l Adver.</u>, 861 F.2d at 248 ("The City may

2  prohibit [commercial] billboards entirely in the interest of traffic safety and aesthetics, and

3  may also prohibit them except where they relate to activity on the premises on which they are

4  located.") (internal citations omitted).

5      Because Section 17.52.515 passes intermediate scrutiny,  the County's regulation of

6  commercial speech is facially valid.  Summary judgment as to Plaintiffs' First Amendment

7  free speech claim is therefore appropriate as to the content-regulation issue.

8                          **ii.      State Claim**

9      Plaintiffs further argue that even if Section 17.52.515 is not a content-based restriction

10  of speech under the First Amendment, the provision still violates Art. I, § 2(a) of the

11  California Constitution.  Plaintiffs assert that the protections established by this liberty of

12  speech clause are broader than those created by the First Amendment, so the onsite/offsite

13  and commercial/noncommercial distinctions in Zoning Ordinance § 17.52.515(A)—which

14  are content-neutral under the First Amendment's free speech clause—become content-based

15  under the California Constitution framework, subjecting the provision to strict scrutiny.

16  Opp'n at 23–25.  The County contends that no case law supports Plaintiffs' argument.  Reply

17  at 11–12.

18      The Court agrees with the County, as it cannot find any authority suggesting that the

19  distinctions identified by Plaintiffs in Section 17.52.515 violate the liberty of speech clause

20  of the California Constitution.  That clause states that "[e]very person may freely speak,

21  write and publish his or her sentiments on all subjects," and "[a] law may not restrain or

22  abridge liberty of speech . . . ."  Cal. Const. art I, § 2(a).  It is undisputed that California's

23  liberty of speech clause "is broader and more protective than the free speech clause of the

24  First Amendment."  <u>L.A. Alliance for Survival v. City of L.A.</u>, 993 P.2d 334, 342 (Cal.

25  2000) (collecting cases discussing breadth of liberty of speech clause).  But "[m]erely

26  because [the liberty of speech clause] is worded more expansively and has been interpreted

27  as more protective than the First Amendment, however, does not mean that it is broader than

28                                27

United States District Court
For the Northern District of California

1   the First Amendment in all its applications." Id.  Indeed, courts interpreting free speech

2   claims under the liberty of speech clause "borrow from federal First Amendment

3   jurisprudence to analyze whether a rule is content-based or content-neutral." Glendale

4   Assocs., Ltd. v. NLRB, 347 F.3d 1145, 1155 (9th Cir. 2003); see also Fashion Valley Mall,

5   LLC v. NLRB, 172 P.3d 742, 753 (Cal. 2007) (using both Supreme Court and California

6   state authority to determine whether restriction was content-based).

7   Plaintiffs cite Metromedia, Inc. v. City of San Diego, 649 P.2d 902, 908 (Cal. 1982)

8   ("Metromedia II") to support their assertion that an ordinance that only distinguishes

9   between commercial and noncommercial speech violates the California Constitution. See

10  Opp'n at 24.  But as the County correctly points out, Plaintiffs disregard the context of that

11  decision. See Reply at 11–12.  In Metromedia, the Supreme Court noted that its facial

12  invalidation of the ordinance in question was "based essentially on the inclusion of

13  noncommercial speech within the prohibitions of the ordinance . . . ." 453 U.S. at 521 n.26.

14  As a result, when discussing the distinction between commercial and noncommercial speech,

15  Metromedia II was only determining whether it could sever the unconstitutional provision

16  from the ordinance. See 649 P.2d at 908–09.  The court concluded that it could not do so

17  based on the structure of the ordinance, and consequently invalidated the entire ordinance.

18  Id. at 909.

19  But in attempting to reform the ordinance as directed by the Supreme Court,

20  Metromedia II explicitly acknowledged that it could "'sustain the ordinance by limiting its

21  reach to commercial speech . . . .'" 649 P.2d at 904 (quoting Metromedia, 453 U.S. at 521

22  n.26) (emphasis added).  Section 17.52.515, of course, already limits its application to

23  "offsite commercial messages . . . ." Zoning Ordinance § 17.52.515(A).  This provision is, in

24  effect, what Metromedia II sought to create.

25  Plaintiffs have not provided any additional authority suggesting that the prohibition of

26  "commercial messages" violates the liberty of speech clause.  Accordingly, the Court finds

27

28                                                                28

United States District Court
For the Northern District of California

this construction acceptable under the California Constitution.[29]

Because the Court finds Section 17.52.515 to be content-neutral under the California Constitution, the Court examines that provision under California's intermediate scrutiny test. "A content-neutral regulation of the time, place, or manner of speech is subjected to intermediate scrutiny to determine if it is '(i) narrowly tailored, (ii) serves a significant government interest, and (iii) leaves open ample alternative avenues of communication.'" Fashion Valley Mall, 172 P.3d at 751 (quoting L.A. Alliance, 993 P.2d at 340). The first two prongs correspond to extremely similar ones in the Central Hudson test, and the County has satisfied both of those elements, as discussed supra in Section III(A)(2)(b)(i). Thus the sole remaining question is whether Section 17.52.515 "leaves open ample alternative avenues of communication." Id. This part of the test "help[s] ensure that a facially neutral restriction is not used as a subterfuge to suppress a particular message." L.A. Alliance, 993 P.2d at 357. The evidence shows that the County is not using Section 17.52.515 to suppress a particular message; rather, it is primarily interested in curtailing the growth of billboards in unincorporated areas of the County. See Dalton Decl. at 2:22–23. Nor are persons or entities interested in displaying particular speech precluded from doing so in a different area or in a different form elsewhere in the County. Because Section 17.52.515 leaves open ample alternative avenues of communication, it passes intermediate scrutiny. The Court therefore grants summary judgment on the content-regulation aspect of Plaintiffs' free speech claim under the California Constitution.

## B.   Equal Protection Claims

Plaintiffs contend that summary judgment is inappropriate as to both of their equal

---

[29] Plaintiffs also cite a single case from the Oregon Supreme Court to argue that the onsite/offsite distinction in Section 17.52.515 runs afoul of the liberty of speech clause. Opp'n at 24 (citing Outdoor Media Dimensions, Inc. v. Dep't of Transp., 132 P.3d 5, 18 (Or. 2006)). The Court does not consider this case persuasive. The Ninth Circuit has rejected the approach suggested by Outdoor Media Dimensions, explicitly recognizing that the onsite/offsite distinction is not content-based under the California Constitution. See Vanguard Outdoor, LLC v. City of L.A., 648 F.3d 737, 747–48 (9th Cir. 2011) (holding that offsite sign ban was a content-neutral restriction that was not facially invalid under California Constitution). In the absence of any authority to the contrary, the Court does not consider the prohibition of "offsite commercial messages" to be content-neutral under the California Constitution.

United States District Court
For the Northern District of California

1  protection claims because the Zoning Ordinance allows the County to prevent the display of

2  Plaintiffs' Signs, even though the Signs would be permissible if either of two groups—(1)

3  CBS Outdoor and Clear Channel Communications, whose billboards are subject to the

4  County's relocation program, and (2) government speakers—sought to display the Signs.

5  Opp'n at 5.  The County has not responded to the comparison to the government speakers,

6  but argues in its Reply that CBS and Clear Channel are not subject to the same Zoning

7  Ordinance provisions as Plaintiffs, because those companies owned legally permitted

8  billboards in the County's unincorporated areas prior to the enactment of Zoning

9  Ordinance § 17.52.515.  Reply at 13; Dalton Decl. at 3:1–7, 3:17–27.

10       But as Plaintiffs point out, the County did not address Plaintiffs' equal protection

11 claims at all in their opening brief on this motion.  See generally Memo.; see also Opp'n at 5.

12 The Court does not consider arguments raised for the first time in a reply brief.  See United

13 States v. Romm, 455 F.3d 990, 997 (9th Cir. 2006) (citing Smith v. Marsh, 194 F.3d 1045,

14 1052 (9th Cir. 1999)); United States ex rel. Giles v. Sardie, 191 F. Supp. 2d 1117, 1127 (C.D.

15 Cal. 2000).  In addition, the County did not provide in its Reply any reason to grant summary

16 judgment as to the equal protection claims with respect to the government speakers.  See

17 Reply at 12–13.  The County therefore either has not provided any basis for summary

18 judgment or has prevented Plaintiffs from adequately responding to the County's arguments

19 in favor of summary judgment.  As a result, the Court does not grant summary judgment on

20 either of Plaintiffs' equal protection claims.

21 **IV.    CONCLUSION**

22       For the foregoing reasons, the Court GRANTS summary judgment for the County as

23 to Plaintiffs' free speech claims, to the extent that those claims are based on: (1) an as-

24 applied challenge; (2) a facial challenge as to the unfettered discretion granted by Zoning

25 Ordinance §§ 17.52.520(Q), 17.52.520(D), and 17.54.130; and (3) a facial challenge as to

26 Section 17.52.515's purported regulation of speech based on its content.  The Court DENIES

27 the County's motion as to Plaintiffs' facial challenge regarding the unfettered discretion

28

granted by Zoning Ordinance § 17.18.130, and as to Plaintiffs' equal protection claims.

**IT IS SO ORDERED.**

Dated: July 16, 2015

_____
CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California