1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   CITIZENS FOR FREE SPEECH, LLC,          No. C14-02513 CRB
     ET AL.,
12                                           **ORDER GRANTING IN PART AND**
                    Plaintiffs,              **DENYING IN PART DEFENDANT'S**
13                                           **SECOND MOTION FOR SUMMARY**
        v.                                   **JUDGMENT; GRANTING IN PART**
14                                           **AND DENYING IN PART**
     COUNTY OF ALAMEDA,                       **PLAINTIFFS' MOTION FOR**
15                                           **SUMMARY JUDGMENT**
                    Defendant.
                                    /
16

17

18          Before the Court are the parties' cross motions for summary judgment in this case

19   concerning billboards in Alameda County.  See generally County MSJ 2 (dkt. 82); Plaintiffs'

20   MSJ (dkt. 86).  Following the Court's first summary judgment ruling, see MSJ Order (dkt.

21   71), there are three disputes left in the case: (1) whether and how Plaintiffs can recover on

22   their facial challenge to the now-superseded Alameda County Zoning Ordinance section

23   17.18.130; (2) whether section 17.52.515 violates Plaintiffs' Equal Protection rights under

24   the Fourteenth Amendment and California Constitution by preventing display of Plaintiffs'

25   signs but allowing grandfathered billboard companies to display signs; and (3) whether

26   section 17.52.520(A) likewise violates Plaintiffs' Equal Protection rights by preventing

27   Plaintiffs' signs but allowing public agencies to erect official public signs.  As explained

28   below, the Court grants the County's Motion (and denies Plaintiffs' Motion) as to sections

     17.18.130 and 17.52.515, but grants Plaintiffs' Motion (and denies the County's Motion) as

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

to section 17.52.520(A).

## I.    BACKGROUND

The Zoning Ordinance at issue partitions Alameda County's unincorporated territory into twenty-five different types of districts, within which only certain buildings, structures, or land uses are permitted.  See ALAMEDA, CA., CODE § 17.02.050.[1]  Plaintiff Michael Shaw owns a parcel of land located at 8555 Dublin Canyon Road (the "Parcel") in Alameda County.  Shaw Decl. (Plaintiffs' RJN) (dkt. 65-1) ¶ 2.  The Parcel is located in a Planned Development ("PD") district.  Id.

Plaintiff Citizens for Free Speech, LLC ("Citizens") and Shaw (collectively "Plaintiffs") entered into an agreement providing for the construction and display of three signs (the "Signs") on the Parcel.  Herson Decl. (dkt. 64-2) ¶ 2.  Shaw and Citizens have agreed to share in the proceeds earned from displaying the Signs.  Id.  The Signs currently consist entirely of non-commercial messages that "challenge the political ideology espoused by County officials,"[2] but Plaintiffs assert that the signs will contain commercial messages in the future.  Id. ¶ 3; Compl. (dkt. 1) ¶ 12.

According to Shaw, a County official visited the Parcel on June 9, 2014 to inform him that the Signs were prohibited within a Scenic Corridor Combining ("SC") district.  Shaw Decl. ¶ 4.  On June 10, 2014, the County mailed Shaw a "Declaration of Public Nuisance—Notice to Abate," claiming that the Signs violated Ordinances sections 17.18.010 and 17.18.120.  Id. ¶¶ 5, 6, Ex. C.  The Notice to Abate instructed Shaw to remove the Signs or face an abatement proceeding and escalating schedule of fines.  Id.

Plaintiffs sued and moved for a temporary restraining order to stop the abatement

---

[1] All citations to code sections are to the Alameda County Municipal Code, Title 17 Zoning Ordinances, hereinafter referred to as "the Zoning Ordinance" or "the Ordinance."

[2] These signs would make very little sense to most observers: "Huge Plans That Affect You! 'One Bay Area' aka 'Plan Bay Area'"; "Stack and Parkprojects & Gridlock, Relocation of People: Rural to Urban, Cities and Counties Dissolve into 'Region'"; "Plans dictated by non-elected councils called 'ABAG' and 'ICLEI'"; "'ABAG' and 'ICLE' use 'environment' to impose bogus agendas"; "Intensely urbanizing transforming your way of life, stop 'One Bay Area'"; "Inquiring Minds Invited! GlobalizationOfCalifornia.com."  See Compl. (dkt. 1) ¶ 11.

2

United States District Court
For the Northern District of California

proceedings and impending fines.  Pls.' Mot for Temp. Restraining Order (dkt. 11).[3]  In their

Complaint, Plaintiffs asserted four claims: (1) violation of their right to free speech under the

First Amendment; (2) violation of their right to Equal Protection under the Fourteenth

Amendment; (3) violation of their right to free speech under the California Constitution; and

(4) violation of their right to Equal Protection under the California Constitution.  See Compl.

¶¶ 34–48.

The Court granted Plaintiffs a preliminary injunction, characterizing Plaintiffs' First

Amendment arguments as "overbreadth" challenges, see Order Granting Motion for

Preliminary Injunction (dkt. 34) at 4–5, and finding that Plaintiffs were likely to succeed on

the merits of their arguments that the Ordinance was facially invalid because it (1) gave

County officials unfettered discretion to make certain determinations regarding signs

according to a subjective finding of a "material change" and (2) failed to ensure that those

decisions would be made in a timely manner, see generally Preliminary Injunction (dkt. 50).

Following discovery, the County moved for summary judgment on all of Plaintiffs'

claims.  See generally MSJ Order.  The Court granted summary judgment for the County on

Plaintiffs' free speech claims to the extent that they were based on as-applied challenges,

facial challenges to Ordinance sections 17.520(Q), 17.52.50(D), 17.54.130, and section

17.52.515's purported regulation of speech based on content.  Id. at 2.  The Court denied

summary judgment on (1) Plaintiffs' facial challenge to Zoning Ordinance section

17.18.130,[4] finding that "the 'totality of the factors' indicates that County officials have

---

[3] The County notes that the lawsuit was actually filed preemptively on June 1, 2014, eight days prior to the County official's visit to the Parcel.  See County MSJ 2 at 3.

[4] That section gave County officials discretion to determine whether a property owner must seek to implement a proposed use through a Conditional Use Permit ("CUP") or an application for rezoning, based on whether the proposed use "materially change[s] the provisions of the approved land use and development plan" for the property; it did not define what "materially change" meant or provide any objective standards for making that determination.  See id. at 11–12; see also Plaintiffs' RJN (dkt. 87) Ex. C at 28 (excerpting original section 17.18.130).

United States District Court
For the Northern District of California

1    unfettered discretion under that provision,"[5] and on (2) Plaintiffs' Equal Protection claims,

2    finding that the County had failed to address those claims in its opening brief. Id. at 14, 30.

3    These are the only claims that remain.

4         On September 29, 2015, in response to the Court's denial of summary judgment, the

5    County amended section 17.18.130. See County MSJ 2 at 4; Lopez Decl. ¶ 10; Plaintiffs'

6    RJN Exs. A, B.  Under the amended section, officials no longer have to determine whether a

7    proposed land use constitutes a "material change" to the approved land use—rather, the

8    Conditional Use Permit ("CUP") process is now the only path when a landowner wants to

9    use his or her land for a purpose other than that for which it is zoned.  Lopez Decl. ¶ 10.  The

10   amended language of section 17.18.130 authorizes an official to issue a CUP only where he

11   or she makes specific findings that:

12       a.   The proposed change does not increase:

13            1)   The number of housing units beyond that permitted in the existing Land
                  use and development plan; or
14            2)   The number of, or size of, structures; or
             3)   The number of, or size of, accessory structures; or
15            4)   Signage (number and/or aggregate sign area); or
             5)   The floor area ration of the structures permitted in the existing land use
16                and development plan.

17       b.   The original land use and development plan was approved less than five years
             ago;
18
     c.   The proposed change does not reduce public infrastructure provided in the land
19        use and development plan;

20       d.   The proposed change does not reduce public uses such as community centers,
             public parks or open spaces;
21
     e.   The proposed change does not have an adverse financial impact on the county,
22        including the provision of services;

23       f.   The proposed change does not involve uses not previously approved for the

24   _____

25       [5] The Court noted in that Order that Plaintiffs requested partial summary judgment on those
     claims, but that "Plaintiffs might have created a genuine issue of material fact sufficient to defeat
26   summary judgment on some of their claims, but they have not shown an absence of a genuine issue of
     material fact in their favor on those claims."  Id. at 2 n.4.  The Court did not, as Plaintiffs now assert,
27   hold that the original section 17.18.130 is unconstitutional or grant summary judgment for Plaintiffs on
     any claims.  See Opp'n to County MSJ 2 (dkt. 95) at 1 ("This Court has concluded twice that the PD
     District provisions of the zoning ordinance in force at the time Citizens' signs were built and at the time
28   this action was filed are facially unconstitutional."); Plaintiffs' MSJ at 2 ("This Court previously held
     that the County's procedure for changed to a PD District . . . was unconstitutional").

4

1

project.

2
3

The Planning Commission shall adopt a statement or resolution of findings for each criteria required for issuance of a conditional use permit.  A Planning Commission decision pursuant to this Section is subject to appeal pursuant to Section 17.54.670.

4

ALAMEDA, CA., CODE § 17.18.130 (as amended Sept. 29, 2015).

5
6
7

The other two sections of the Ordinance that are at issue in this case, and which have not changed over the course of the litigation, are sections 17.52.515 and 17.52.520(A). Section 17.52.515 reads, in relevant part:

8
9
10
11
12
13

[N]o person shall install, move, alter, expand, modify, replace or otherwise maintain or operate any billboard or advertising sign in the unincorporated area of Alameda County, except: (1) Those billboards or advertising signs which legally exist as of the time this section is first adopted; (2) Those billboards or advertising signs for which a valid permit has been issued and has not expired; (3) Pursuant to an agreement relocating presently existing, legal billboards or advertising signs pursuant to Business and Professions Code Section 5421; provided that every billboard or advertising sign relocation agreement shall fully comply with the site development review process and criteria in Sections 17.54.220 and 17.54.226 . . . .

14
15
16

ALAMEDA, CA., CODE § 17.52.515.  Section 17.52.520(A) allows "Official public signs or notices or any temporary notice posted by a public officer in the performance of his duty." ALAMEDA, CA., CODE § 17.52.520(A).

17
18
19
20
21
22
23
24

The County now moves for summary judgment, arguing that the amendment to section 17.18.130 renders Plaintiffs' facial challenge moot, and that Plaintiffs' Equal Protection claims fail because Plaintiffs are not members of a protected class, the challenged provisions do not constitute content regulation, and the Zoning Ordinance's exceptions are not content-based.  See generally County MSJ 2.[6]  Plaintiffs, in their cross-motion, argue that they are entitled to a permanent injunction because the original section 17.18.130 is invalid and they constructed their signs before the amended section 17.18.130 went into effect.  See Plaintiffs' MSJ at 4–6.  Plaintiffs also complain that the Ordinance makes exceptions for

25
26
27

[6] Originally, the County filed a motion for judgment on the pleadings in January 2016. See County MJOP (dkt. 72).  In reviewing the papers on that motion, the Court felt that the issues and arguments were more appropriately addressed on summary judgment, and ordered the parties to re-file their motion under FRCP 56.  See Order (dkt. 80).

28

1  other advertisers and for governmental speakers in violation of Plaintiffs' Equal Protection

2  rights. Id. at 8.

## II.   LEGAL STANDARD

4        Summary judgment is appropriate where "the pleadings, depositions, answers to

5  interrogatories and admissions on file, together with the affidavits, if any, show that there is

6  no genuine issue of material fact and that the moving party is entitled to judgment as a matter

7  of law." Fed. R. Civ. P. 56(c). A principal purpose of the summary judgment procedure is to

8  isolate and dispose of factually unsupported claims. See Celotex Corp. v. Catrett, 477 U.S.

9  317, 323–24 (1986). The burden is on the moving party to demonstrate that there is no

10 genuine dispute with respect to any material fact and that it is entitled to judgment as a matter

11 of law. Id. at 323. A genuine issue of fact is one that a trier of fact could reasonably resolve

12 in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

13 (1986). A dispute is "material" only if it could affect the outcome of the suit under the

14 governing law. Id. at 248–49.

15       If the moving party does not satisfy its initial burden, the nonmoving party has no

16 obligation to produce anything and summary judgment must be denied. Nissan Fire &

17 Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102–03 (9th Cir. 2000). If, on the other hand,

18 the moving party has satisfied its initial burden of production, then the nonmoving party may

19 not rest upon mere allegations or denials, but instead must produce admissible evidence

20 showing that there is a genuine issue of material fact for trial. Id. at 1103. The nonmoving

21 party must "set out 'specific facts showing a genuine issue for trial.'" Celotex, 477 U.S. at

22 324–25 (quoting Fed. R. Civ. P. 56(c)). If the nonmoving party fails to make this showing,

23 the moving party is entitled to judgment as a matter of law. Id. at 323.

24       It is not a court's task "to scour the record in search of a genuine issue of triable fact."

25 Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal citation omitted). Rather, a

26 court is entitled to rely on the nonmoving party to "identify with reasonable particularity the

27 evidence that precludes summary judgment." See id. However, when deciding a summary

28

6

judgment motion, a court must view the evidence in the light most favorable to the

nonmoving party and draw all justifiable inferences in its favor.  <u>Anderson</u>, 477 U.S. at 255;

<u>see also</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## III.   DISCUSSION

The Court now turns to the parties' arguments in their cross-motions as to the two sets

of claims remaining in the case: (A) Plaintiffs' facial challenge to section 17.18.130, and (B)

Plaintiffs' Equal Protection challenges to sections 17.52.515 and 17.52.520(A).  As to (A),

the Court concludes that the overbreadth challenge to section 17.18.130 is moot, and that

Plaintiffs are entitled to neither injunctive relief nor damages.  As to (B), the Court concludes

that the Equal Protection challenge to section 17.52.515 fails, because that section is content-

neutral and has a rational basis, but that the Equal Protection challenge to section

17.52.520(A) succeeds, because that section is content-based and cannot withstand strict

scrutiny.

### A.      Plaintiffs' Facial Challenge to Section 17.18.130

Plaintiff's facial challenge to the original section 17.18.130 stemmed from that

section's alleged unconstitutional grant of "unfettered discretion" to County officials.

<u>See</u> Compl. ¶¶ 21-22 (discussing the "material change" language in original section

17.18.130 and complaining that "The Code provides no standards to guide the County

Planning Commission in determining whether any given proposed land use constitutes a

'material change' to the Land and Development Plan.'").  The County argues that because it

recently amended that section, Plaintiffs' claims are moot.  <u>See</u> County MSJ 2 at 6.  Plaintiffs

oppose that argument.  <u>See</u> Opp'n to County MSJ 2 (dkt. 95) at 6 ("the controversy was not

settled by the County's amendment to 17.18.130 because Citizens' signs are still up and the

County still wants to abate them.").  Plaintiffs also, in their own motion, argue that they are

entitled to a permanent injunction because the original section 17.18.130 was

unconstitutional and the amended section 17.18.130 does not apply retroactively where

Plaintiffs' billboards existed prior to its enactment.  <u>See</u> Plaintiffs' MSJ at 4–7.  Analysis of

United States District Court
For the Northern District of California

the mootness question begins with whether the relief sought is injunctive or monetary.  See Outdoor Media Grp., Inc. v. City of Beaumont, 506 F.3d 895, 900–03 (9th Cir. 2007).

### 1.    Injunctive Relief

Generally, a court should not consider a claim moot if a defendant voluntarily ceases the allegedly improper behavior in response to a suit but is free to return to it at any time. See Outdoor Media, 506 F.3d at 900–01; Native Village of Noatak v. Blatchford, 38 F.3d 1505, 1510 (9th Cir. 1994).  "A statutory change, however, is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed."  Outdoor Media, 506 F.3d at 901 (internal quotation marks omitted).[7]  Further, where there is no longer any risk that a plaintiff will be subject to the challenged ordinance, there exists no live issue upon which a court could issue prospective relief.  Id. (citing Noatak, 38 F.3d at 1510).

A claim is not mooted following a statutory amendment where it is "virtually certain" that the repealed law will be re-enacted.  Id. at 901.  In City of Mesquite v. Aladdin's Castle, 455 U.S. 283, 289 (1982), and Northeast Fla. Contractors v. Jacksonville, 113 S. Ct. 2297 (1993), for example, the Supreme Court refused to dispose of claims as moot following amendment or replacement of the offending statutes.  However, to read those cases as a per se bar to a mootness defense would "not square with this circuit's precedent.  Noatak limited Mesquite to the 'rare' situation 'where it is virtually certain that the repealed law would be reenacted.'"  Outdoor Media, 506 F.3d at 901 (quoting Noatak, 38 F.3d at 1510) (emphasis in original).  "The fact that the lawsuit may have prompted the [County's] action does not alone show the [County's] intent to later re-enact the challenged ordinance."  Id. at 901; cf. Smith v. Univ. of Wash. Law Sch., 233 F.3d 1188, 1194 (9th Cir. 2000) (defendant gave no indication of intention to reinstate policy invalidated while case was pending and the circuit

---

[7] The Court previously relied on Outdoor Media in determining that the County's amendment of two other sections of the Ordinance, which removed the discretionary elements, mooted Plaintiffs' challenges to those sections.  See MSJ Order at 10–11.

United States District Court
For the Northern District of California

1   court "will not assume that it will. . . . we will not assume that it will act in bad faith.").[8]

2   Plaintiffs have not demonstrated that there is any risk that the County will re-enact the

3   original section 17.18.130.  Moreover, the amended section 17.18.130 achieves the County's

4   stated goals: preserving open areas and natural and topographic features with minimum

5   alteration of natural land forms, providing an environment that will encourage the use of

6   common open areas, and creation of an attractive, efficient, and safe environment.  See

7   ALAMEDA, CA., CODE §17.18.010.  Thus, the County has "no motive to re-enact a

8   constitutionally suspect ordinance to accomplish the same objectives."  See Outdoor Media,

9   506 F.3d at 901.

10   Plaintiffs insist that their injunctive relief claim is nonetheless still viable.  They

11   maintain that their challenge to the original section 17.18.130 is not moot

> because Citizens has signs that were erected while the County's code was
> unconstitutional, and because the code has since been amended . . . the County
> has no ordinance that could be applied to Citizens' signs.  Nonetheless, the
> County has stated that it will seek to abate Citizens' signs if the injunction is
> lifted.  Therefore, Citizens' request for injunctive relief is not moot because the
> County will seek to abate Citizens' signs in the absence of an injunction despite
> having no legally cognizable basis to do so.

Opp'n to County MSJ 2 at 4–5.  Plaintiffs add that the County's amendment of section

17.18.130 does not "settle[] the controversy," because "Citizens' signs are still up and the

County still wants to abate them."  Id. at 6 (quoting Chemical Producers & Distributors

Ass'n v. Helliker, 463 F.3d 871, 875 (9th Cir. 2006) ("Helliker").  But this is not an accurate

characterization of the law.

The Ninth Circuit in Helliker explained that "[t]he test for whether intervening

legislation has settled a controversy involving only declaratory or injunctive relief is

'whether the new [law] is sufficiently similar to the repealed [law] that it is permissible to say

that the [government's] challenged conduct continues."  463 F.3d at 875.  There is no as-

---

[8] The Outdoor Media court noted that "it would be an odd incentive structure that punishes a city for repealing an ordinance in response to a litigant's suggestion that said ordinance was illegal." Outdoor Media, 506 F.3d at 901 n.3.

9

**United States District Court**
For the Northern District of California

applied challenge left in the case.  <u>See</u> MSJ Order at 7.  The only issue left as to section 17.18.130 is its facial invalidity.  <u>See id.</u> at 7–9, 11–14.  Plaintiffs' complaint alleged that section 17.18.130 was facially invalid because it provided unfettered discretion to officials determining whether any given proposed land use constituted a "material change." <u>See</u> Compl. ¶¶ 21–22.  It no longer does that.  The ordinance as amended resolves Plaintiffs' concerns by requiring that an official make at least six specific findings regarding new criteria when making an assessment, and removing the "material change" language entirely. <u>See</u> RJN Ex. A.  The required objective and quantifiable findings sufficiently cabin officials' discretion by providing "adequate standards to guide the official's discretion.  <u>See</u> <u>Outdoor Sys., Inc. v. City of Mesa</u>, 997 F.2d 604, 613 (9th Cir. 1993).[9]  The "material change" language that Plaintiffs complain of, <u>see</u> Compl. ¶¶ 21–22, no longer exists.  The amendment "cures the constitutional deficiencies that [Plaintiffs] alleged in connection with the original sign ordinance."  <u>See</u> <u>Outdoor Media</u>, 506 F.3d at 901.

In their motion, Plaintiffs cite a single Central District of California decision for the proposition that it is when the billboards were <u>built</u> that excepts Plaintiffs' signs from the mootness doctrine.  <u>See</u> Plaintiffs' MSJ at 4–6.  In that unpublished decision, which resolved a motion to dismiss, the question was whether the plaintiffs' claims for declaratory and injunctive relief as to an old ordinance and the amended ordinance were moot.  <u>See</u> Plaintiffs' RJN Ex. F (dkt. 87-4) (MTD Order in <u>Valley Outdoor, Inc. v. City of Riverside</u>, No. CV 00-00370 DT (Cwx)).  The district court granted a permanent injunction as to the old ordinance, which a California court had found unconstitutional, and entered a preliminary injunction barring the city from compelling Plaintiffs to remove their signs.  <u>See id.</u> at 13, 16–17.  But that case is factually distinguishable.  The plaintiffs' complaint in <u>Valley</u>

---

[9] Arguably, the new guidelines in this case are even more objective than those in <u>Outdoor Media</u>, which required that the Director of Planning determine whether the proposed sign's content related to its site; here the determination is based on measurable indices like time, number of housing units, structures, and signage, and adverse financial impact.  <u>See</u> <u>Outdoor Media</u>, 506 F.3d at 904; <u>compare</u> RJN Ex. A.

Outdoor included claims about both the old and amended ordinance.  See id. at 6; see also Valley Outdoor, Inc. v. City of Riverside, 446 F.3d 948, 951 (9th Cir. 2006) (explaining that the Third Amended Complaint included claims regarding Original and Amended Ordinances).  This case pertains only to the original section 17.18.130.  See Compl. ¶¶ 21–22.  In addition, there was evidence in the Valley Outdoor case that the city had engaged in illegal enforcement of the old (invalidated) ordinance.  Plaintiffs' RJN Ex. F at 4–5.  There is no such evidence here, which is fatal for Plaintiffs' argument, relying on Valley Outdoor, that "a permanent injunction preventing the County from enforcing its old ordinance [17.18.130] is proper."  See Plaintiffs' MSJ at 5; see also id. at 6–7 ("since the County has repealed the code section containing this provision, the old code's permit scheme cannot be enforced against Citizens.  Citizens is therefore entitled to a permanent injunction barring enforcement of the old ordinance against its signs.").

        In granting the preliminary injunction barring the city from compelling the plaintiffs from removing their signs, the district court in Valley Outdoor commented on the impact such removal would have on the plaintiffs.  See Plaintiffs' RJN Ex. F at 17–18.[10]  It also took note of the city's bad faith with respect to the amended ordinance.  Id. at 4–5.[11] Subsequently, the district court found that the plaintiffs' actions—unlawfully constructing the billboards without seeking or obtaining permits or safety inspections—merited the dissolution of the injunction, and it ordered the plaintiffs to remove their signs.  See Opp'n to Plaintiffs' MSJ (dkt. 92) at 2; RJN Ex. A (dkt. 94-1) (Order of 11/7/2003 Dissolving in Part

---

        [10] The court explained: "Enforcement of the Amended Ordinance presents an actual and substantial threat to Plaintiffs' activities and thus poses a hardship to Plaintiffs in the event this Court declines to exercise subject matter jurisdiction over Plaintiffs' first cause of action as it relates to the Amended Ordinance for several reasons.  In enforcing the Amended Ordinance, City has issued five Stop Work Notices, ordering Plaintiffs to cease activities in relation to the Freeway Signs. . . .  In addition, Plaintiffs allege that City is threatening to remove Plaintiffs' Freeway Signs and attempting to prevent any change of advertising message on the Freeway signs." Id.

        [11] The court explained that the plaintiffs had completed construction of signs before the city adopted the amended ordinance, that the city had communicated to the plaintiffs before adopting the amended ordinance that "applications would be accepted," that the city had in bad faith retroactively applied the amended ordinance, and that the city had applied the amended ordinance before it had been enacted. Id.

and Modifying in Part Preliminary Injunction) at 2.[12]  But the <u>Valley Outdoor</u> case does not provide support for this Court to enter an injunction—if Plaintiffs even seek one—as to the amended ordinance.  If the County indeed seeks to abate Plaintiffs' signs and has, as Plaintiffs argue in their opposition brief, "no ordinance" that enables it to do so, <u>see</u> Opp'n to County MSJ 2 at 4–5, that issue is nowhere contained in this lawsuit.  <u>See</u> Compl. ¶¶ 21–22 (overbreadth challenge to "material change" language in original section 17.18.130); Reply re County MSJ 2 (dkt. 98) at 5 ("That the County may attempt to abate a structure erected in violation of a valid development plan does not render 'unsettled' the original controversy over the original version of § 17.18.130.").  Thus, although the parties also tangle about whether the amended ordinance has retroactive effect, <u>see</u> Opp'n to Plaintiffs' MSJ at 5–8; Reply re Plaintiffs' MSJ (dkt. 99) at 2–5, and the County argues that it was actually section 17.18.120[13] and not section 17.18.130 with which Plaintiffs failed to comply, <u>see</u> Shaw Decl. Ex. C (Notice to Abate: "This is in violation of Alameda County Zoning Ordinance Section

---

[12] The parties here disagree about the appellate history of the <u>Valley Outdoor</u> case.  <u>See</u> Plaintiffs' MSJ at 5 ("The Ninth Circuit affirmed this portion of Judge Tevrizian's ruling"); Opp'n to Plaintiffs' MSJ at 3 ("the Court of Appeals expressly noted that the city had not appealed the District Court's ruling that the amended ordinance could not be enforced against the plaintiff's signs, and that issue was also not before the Court of Appeals when it issued its decision").  To the extent that it matters, the Ninth Circuit held in 2003 that "the appellants' billboards are illegal for one simple reason: they fail to meet the content-neutral zoning, size, and height restrictions in both the Original Ordinance and the New Ordinance."  <u>Valley Outdoor, Inc. v. County of Riverside</u>, 337 F.3d 1111, 1115 (9th Cir. 2003).  The Ninth Circuit explained in 2003 that the district court's July 2000 order resulted in a permanent injunction forbidding the city from enforcing the invalidated provisions of the Original Ordinance, and that in April 2002, the district court at summary judgment held that "sections of the amended ordinance are not enforceable against the billboards at issue," adding that "[t]he City does not appeal this ruling."  <u>Valley Outdoor, Inc.</u>, 446 F.3d at 951.  The Ninth Circuit's opinion in 2006 dealt with only (1) whether the plaintiffs had standing, (2) whether the district court abused its discretion in ruling on a motion in limine, and (3) whether the city was entitled to judgment as a matter of law.  <u>Id.</u>

[13] That section states: "Any use of land within the boundaries of a planned development district adopted in accordance with the provisions of this chapter shall conform to the approved land use and development plan."  Section 17.18.120 has not been amended.

17.18.010 and 17.18.120); Opp'n to Plaintiffs' MSJ at 5, these arguments are premature.[14]

As there are no causes of action based on amended section 17.18.130, and the County has made no effort to enforce the original section 17.18.130 against Plaintiffs, there is no basis for granting a permanent injunction.  The claim being moot, the Court GRANTS the County's motion as to Plaintiffs' claim for injunctive relief based on section 17.18.130, and DENIES Plaintiffs' motion, which seeks a permanent injunction as to the same section.

### 2.    Damages

Plaintiffs next argue that they are entitled to nominal damages for their First Cause of Action.  See Plaintiffs' MSJ at 10 ("Since Citizens has its signs, and was not deprived of the right to erect the signs—since the County's ordinance cannot be enforced against Citizens' signs—it has not sustained economic damages per se.  Nonetheless, Citizens alleged, and the Court found in both its order on Citizens' motion for preliminary injunction and the County's first summary judgment motion, that Citizens suffered—or would have suffered in the absence of an injunction—a First Amendment injury.").  As a matter of law, the repeal of an ordinance under which a party claims to have been injured does not moot its claim for damages.  Outdoor Media, 506 F.3d at 902 (citing Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 608–09 (2001)).  Where a plaintiff seeks damages for a past violation of its rights, the violation is not mooted by a promise not to repeat the alleged conduct in the future.  Id.

However, the Court has previously recognized that Plaintiffs' facial challenge to the Ordinance "are best characterized as 'overbreadth' challenges."  MSJ Order at 7; United States v. Linick, 195 F.3d 538, 542 (9th Cir. 1999) (considering overbroad regulations that vested officials with unbridled discretion to deny expressive activity).  Because Plaintiffs claimed that the Ordinance was overbroad in certain respects, they were able to seek to

---

[14] The County also argues at length that enforcing the amended ordinance against Plaintiffs would not be a taking.  See Opp'n to Plaintiffs' MSJ at 3–5.  Plaintiffs respond that they do not assert that it is.  See Reply re Plaintiffs' MSJ at 2 ("The County's lengthy non sequitur about takings . . . also does not change this fact.").

establish the unconstitutionality of sections not applied to them by "showing that [those provisions] may inhibit the First Amendment rights of individuals who are not before the court."  See 4805 Convoy, Inc. v. City of San Diego, 183 F.3d 1108, 1112 (9th Cir. 1999). However, damages claims are "unavailable for an overbreadth challenge.  An overbreadth claim is essentially a claim that a statute may be constitutional as applied to the plaintiff but sweeps so broad as to unconstitutionally suppress the speech of others not before the court." Outdoor Media, 506 F.3d at 907 (internal citations omitted).  And while this theory presupposes that the ordinance is constitutional as applied to Plaintiffs, the Ninth Circuit has explained that "[o]n an overbreadth challenge [Plaintiffs] would also be barred from collecting § 1983 damages which are available only for violations of a party's own constitutional rights."  Id. (internal quotation marks omitted).  Thus, it appears that Plaintiffs' damages claim fails.[15]

For the foregoing reasons, the Court finds that Plaintiffs are entitled to neither injunctive relief nor damages in connection with their First Cause of Action.

**B.    Equal Protection Claims**

Plaintiffs' Equal Protection claims challenge two parts of the Ordinance, alleging that those sections demonstrate a constitutionally impermissible preference for two groups of speakers—grandfathered billboard companies and government speakers—over Plaintiffs. See Plaintiffs' MSJ at 8; Opp'n to County MSJ 2 at 7–9.  The Court agrees with Plaintiffs as to only the latter group.

**1.    Challenged Sections**

The first section Plaintiffs challenge is section 17.52.515, which provides that "no

---

[15] Plaintiffs' argument also hinges on its assertion that "this litigation has conclusively established that, at a minimum, the PD District scheme, including the 'material change' provision in the original ordinance, is unconstitutional."  See Plaintiffs' MSJ at 9.  But the Court has not so held.  The Court has specifically explained that Plaintiffs requested partial summary judgment on their free speech claims, but that "Plaintiffs might have created a genuine issue of material fact sufficient to defeat summary judgment on some of their claims, but they have not shown an absence of a genuine issue of material fact in their favor on those claims."  MSJ Order at 2 n.4.

United States District Court
For the Northern District of California

person shall install, move, alter, expand, modify, replace of otherwise maintain or operate any billboard or advertising sign in the unincorporated [area] of Alameda County, except . . . (2) Those billboards or advertising signs for which a valid permit has been issued and has not expired . . ." Compl. ¶ 18.  Plaintiffs argue that this section allows "Clear Channel and CBS Outdoor to continue to secure new billboards in any district, pursuant to hefty payments and revenue sharing agreements with the County."  Plaintiffs' MSJ at 8 (citing section 17.52.515).  Plaintiffs argue that this is a "restriction on who can build signs," which "burdens [Plaintiffs'] fundamental rights . . . even in the absence of any other content-based restriction."  Id.

The second section Plaintiffs challenge is section 17.52.520, under which, Plaintiffs allege, "some signs are exempt from the speech restrictions set forth in sections 17.04.010, 17.30.240, and 17.52.515[16] based on the content of the speech displayed thereon."  Compl. ¶ 23.  Such signs include: "Official public signs or notices or any temporary notice posted by a public officer in the performance of his duty."  Id.  Plaintiffs maintain that this exemption for signs by public officers is a "restriction on who can build signs," which "burdens [Plaintiffs'] fundamental rights . . . even in the absence of any other content-based restriction."  Plaintiffs' MSJ at 8.

### 2.    Legal Framework

The parties are far from clear in their briefing about what legal framework governs Plaintiffs' challenges to the above sections.[17]  Plaintiffs suggest at times that they should prevail on both (1) a First Amendment claim based on speaker distinctions in the Ordinance and (2) an Equal Protection claim based on those same distinctions.  See Plaintiffs' MSJ at 7 ("The Exceptions for Government Speakers, Clear Channel, and CBS Outdoor Violate the First Amendment and the Equal Protection Clause") see also Opp'n to Plaintiffs' MSJ at 10

---

[16] Note that, as described below, the Court has not agreed with this interpretation of the interplay between sections 17.52.515 and 17.52.520.

[17] The Court invited the parties to agree on a framework at the motion hearing, to no avail.

15

(addressing "First Amendment Challenge to Section 17.52.520(A)").  There is no First Amendment claim left in the case, however.  See MSJ Order at 30–31 (denying County's summary judgment motion only as to Plaintiffs' facial challenge to section 17.18.130 and their Equal Protection claims).  Accordingly, the Court concludes that Plaintiffs' First Amendment arguments do not support a stand-alone First Amendment claim, but instead form a necessary part of their Equal Protection claims.

The Ninth Circuit explained in Honolulu Weekly, Inc. v. Harris that, in an Equal Protection case, "we begin our analysis by determining the proper level of scrutiny to apply for review.  We apply strict scrutiny if the governmental enactment . . . burdens the exercise of a fundamental right. . . . If the ordinance does not concern . . . a fundamental right, we apply rational basis review and simply ask whether the ordinance 'is rationally-related to a legitimate governmental interest.'"  298 F.3d 1037, 1047 (9th Cir. 2002) (quoting Ball v. Massanari, 254 F.3d 817, 823 (9th Cir. 2001)); see also Rubin v. City of Santa Monica, 308 F.3d 1008, 1019 (9th Cir. 2002) ("rational basis review is appropriate unless the restriction unconstitutionally burdens a fundamental right, here, the right to free speech.  Because we conclude that the restrictions do not unconstitutionally burden [the plaintiff's] right of free speech, we find that neither do they violate his Equal Protection right.").  Plaintiffs argue here that "[Plaintiffs'] fundamental speech right is implicated by the County's unequal treatment of different speakers who erect billboards. . . ."  Plaintiffs' MSJ at 8.  The Court must therefore determine whether the challenged sections implicate Plaintiffs' fundamental speech right; if so, then the ordinance is subject to strict scrutiny,[18] and if not, then it is subject to rational basis review.

Determining whether the challenged sections implicate Plaintiffs' fundamental speech right requires the Court to look first at its previous rulings in this case and then to the evolving case law.

---

[18] That is, unless the section pertains only to commercial speech.  See Central Hudson Gas & Electric Corp. v. Pub. Serv. Commission of N.Y.. 447 U.S. 557, 564 (1980).

### a.    Previous Rulings in This Case

Plaintiffs previously advanced a different theory of the Ordinance's unconstitutionality.  Plaintiffs had argued that the Ordinance banned all billboards in section 17.52.515, but exempted certain kinds of noncommercial signs listed in section 17.52.520; the Court did not read the Ordinance in that way.  See Order Granting Mot. for Preliminary Injunction at 8, 12.  The Court concluded that the County-wide billboard ban of section 17.52.515 did "not prohibit noncommercial speech at all."  Id. at 10 (explaining that the Ordinance defined billboard as synonymous with advertising sign).  Though the "Ordinance enumerates certain 'permitted' signs (not necessarily billboards) that are all of a noncommercial nature," the Court held that those permitted signs were not exemptions to a more generalized ban.  Id. at 10–11.  Further, "[t]he Zoning Ordinance does not ban noncommercial speech, and because exceptions cannot exist without a corresponding general rule, the Court does not interpret the 'permitted' signs to be exceptions to any general ban on noncommercial speech."  Id. at 11.

Plaintiffs argued again in opposing the County's first motion for summary judgment that section 17.52.520 consisted of content-based exemptions to section 17.52.515, and the Court again rejected that argument.  See MSJ Order at 21 ("In arguing that these permitted signs are content-based 'exemptions' that preclude summary judgment, Plaintiffs essentially ask the Court to overturn its prior holding on this issue.  The Court previously concluded that Section 17.52.515 does not regulate noncommercial speech at all."); id. at 22 (reiterating that section 17.52.515 "is not ambiguous: it explicitly regulates only commercial speech.").[19]  The Court noted that "Plaintiffs have alternatively argued" that the Reed v. Town of Gilbert, 135

---

[19] This remains the Court's interpretation of section 17.52.515, but the County has never explained to the Court's satisfaction whether it contends that the Ordinance, somewhere, bars noncommercial signs other than those explicitly allowed by section 17.52.520.  The County has argued that section 17.52.520 is "entirely permissive."  See Defendant County of Alameda's Reply to Plaintiffs' Supplemental Opposition (dkt. 69) at 1.  But if no section of the Ordinance bars noncommercial signs (and Plaintiffs' signs are all currently noncommercial, see Compl. ¶ 11), then presumably the County's answer to Plaintiffs' challenges would be to apologize for the confusion and inform Plaintiffs that their signs are allowed.  That has hardly been the County's position.

S. Ct. 2218 (2015) case "makes the exemptions in Section 17.52.520 content-based." Id. at 23.  But the Court agreed with the County that Reed was distinguishable.  Id.  "Reed was specifically concerned with a sign code's application of different restrictions—including temporal and geographic restrictions—to permitted signs based on their content."  Id. (citing Reed, slip op. at 12).  As "Plaintiffs [had] not identified any distinct temporal or geographic restrictions on different categories of permitted signs in Section 17.52.520 based on those signs' content," the Court held that Reed did not apply.  Id.

Plaintiffs now argue again that Reed represents a change in the law—one relevant to their Equal Protection claims—by establishing that "speaker-based discrimination offends the constitution."  Plaintiffs' MSJ at 7 ("'[T]he fact that a distinction is speaker based does not, as the [Ninth Circuit] Court of Appeals seemed to believe, automatically render the distinction content neutral.'") (quoting Reed, 135 S. Ct. 2218, 2230).  Plaintiffs' argument is more thorough this time,[20] and identifies differing restrictions in the Ordinance based on different types of signs.  As discussed below, the Court concludes that Reed should not be so easily cast aside.

### b.   Evolving Case Law

In G.K. Ltd. Travel v. City of Lake Oswego, 436 F.3d 1064, 1076 (9th Cir. 2006), the Ninth Circuit examined a sign code that provided that "public signs, signs for hospital or emergency services, legal notices, railroad signs and danger signs" had to comply with the sign code but were not subject to the city's permit and fee process.  The plaintiffs argued that those exemptions rendered the sign code content-based.  Id.  The Ninth Circuit disagreed, noting that the code reflected the city's preference not to subject certain agencies to its

---

[20] The parties' briefing on summary judgment had been complete for two weeks when Plaintiffs submitted a Notice of Supplemental Authority alerting the Court to the Reed decision, issued the day before.  See generally Notice of Supplemental Authority (dkt. 68).  The County responded with one page of argument, factually distinguishing Reed.  See generally Defendant County of Alameda's Reply to Plaintiffs' Supplemental Opposition.

18

United States District Court
For the Northern District of California

permitting and fee scheme. Id. at 1077.[21]  It held: "The exemptions are purely speaker based according to the City's reasonable construction of the provision and say nothing of the City's preference for the content of these speakers' messages, nor do they allow the City to discriminate against disfavored speech." Id.  The court went on: "Moreover, these institutional speakers are still subject to the mandates of the Sign Code concerning the type, number and characteristics of signs that are permissible . . . it is just that certain speakers need not obtain permits (and pay the associated fee) before posting their signs." Id.  It concluded: "That the law affects plaintiffs more than other speakers does not, in itself, make the law content based." Id.

The County touts G.K. Ltd. Travel as dispositive, permitting "purely speaker based" exemptions like the challenged sections here. See County MSJ 2 at 16; Opp'n to Plaintiffs' MSJ at 13.  For that to be correct, there are at least two hurdles the County must clear.

First, while the code at issue in G.K. Ltd. Travel, 436 F.3d at 1077, exempted certain government speakers from the permitting and fee provisions, those speakers were nonetheless subject to the sign ordinance generally.  Here the Ordinance appears to make a wholesale exemption for government speakers. See ALAMEDA, CA., CODE § 17.52.520(A) (explicitly permitting "Official public signs or notices or any temporary notice posted by a public officer in the performance of his duty.").  At the motion hearing, the Court asked the County whether public signs are subject to any other restrictions in the Ordinance; counsel answered that they are not, although they are subject to the restrictions of the agencies' governing boards and constituents.  The threat of irate constituents has no constitutional bearing, however.  Under the Ordinance, it appears that while private speakers' signs are subject to various restrictions, public officials' signs could be a mile high and a mile wide, in

---

[21] The court included a footnote, observing that "We have previously questioned the constitutionality of a 'wholesale exemption for government speech,' but we do not read Lake Oswego's Sign Code to provide such an exemption." Id. n.11 (citing Foti v. City of Menlo Park, 146 F.3d 629, 637 (9th Cir. 1998)).  In Foti, 146 F.3d at 637, the Ninth Circuit stated that it was "troubled by the wholesale exemption for government speech," but made no ruling on that issue, because the parties had failed to adequately brief it before the district court and it had not been passed upon below.

United States District Court
For the Northern District of California

the middle of a residential neighborhood, and illuminated with bright flashing lights at all hours.[22]  At the motion hearing, Plaintiffs asserted that under section 17.52.520(A), a school board could erect a sign espousing its own political message (e.g., "Vote Yes on Measure A!") with no restrictions, while a private citizen could not erect a competing sign (e.g., "Vote No on Measure A!").  See also Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1265–66 (11th Cir. 2005).[23]  County counsel responded that private citizens could indeed erect such signs under subsections (H) (temporary political signs) and (P) window signs.  But this response fails to recognize that there are additional restrictions for the private citizen's signs that do not apply to the school board's signs.  See, e.g., ALAMEDA, CA., CODE § 17.52.520(P) (window sign permitted "provided any such sign is neither attached to windows with its sign copy visible from the outside nor otherwise so located inside so as to be conspicuously visible and readable without intentional and deliberate effort from outside the building or structure, provided, however, that any sign or signs which in the aggregate have an area not exceeding twenty-five (25) percent of the window area from which they are viewed are also permitted . . .").  That was not an issue in G.K. Ltd. Travel, 436 F.3d at 1077.

---

[22] County counsel also stated at the motion hearing that there is no evidence that there has been a problematic proliferation of signs by public agencies.  The Court accepts this representation, but it is beside the point.

[23] That case explained: "Even those exemptions that favor certain speech based on the speaker, rather than the content of the message—such as exemption (8) for '[o]fficial signs of a noncommercial nature erected by public utilities,' and exemption (4) for signs 'erected by, or on behalf of, pursuant to the authorization of a governmental body'—are content based.  Under these exemptions, public utilities and government bodies may freely erect signs expressing their political preferences, their positions on public policy matters, and, indeed, their chosen messages on virtually any subject.  Thus, while a public utility could post a sign proclaiming, for example, 'Choose Electric Power,' an individual homeowner or a private business could not display a sign reading, 'Conserve Electricity: Use Solar Power.'  Similarly, while the city counsel could paper the entire City of Neptune Beach with signs advancing its agenda—for example, 'Support School Vouchers,' or 'Enlist in the National Guard'—an individual resident could not freely post even a single yard sign advocating the opposing position—for example. 'Oppose School Vouchers,' or 'Abolish the National Guard.'" Id.
    The County points out that an Eastern District of Washington case distinguished Solantic, Reply to Plaintiffs' Mot. at 9, although that case did so with little discussion and might not reflect the current state of the law in light of Reed, see Demarest v. City of Leavenworth, 876 F. Supp. 2d 1186, 1196 (E.D. Wash. 2012) (relying on G.K. Ltd. Travel in upholding speaker-based exemption for "signs of a public body," stating only, "The Solantic case adopts an overly narrow, restrictive view of the concept of 'content-neutral' which differs from the Ninth Circuit and other precedent cited here.").

Second, it is not clear whether <u>G.K. Ltd. Travel</u> remains good law, in large part

because of <u>Reed</u>.  <u>See</u> <u>United States v. Swisher</u>, 811 F.3d 299, 313 (9th Cir. 2016) ("The

Supreme Court has recently provided authoritative direction for differentiating between

content-neutral and content-based enactments.  <u>See</u> <u>Reed</u>, 135 S. Ct. at 2226–27.").  At issue

in <u>Reed</u> was a sign code prohibiting the display of outdoor signs anywhere without a permit,

but exempting 23 categories of signs, three of which were at issue.  <u>See</u> <u>Reed</u>, 135 S. Ct. at

2224–25.  These were: "ideological signs," which the code treated most favorably, allowing

them to be up to 20 square feet and placed in all districts without time limits; "political

signs," treated less favorably, allowed to be up to 16 square feet on residential property and

up to 32 square feet on nonresidential property, and allowed up for 60 days before a primary

election and for 15 days following a general election; and "temporary directional signs,"

treated even less favorably, allowed to be no larger than six square feet, with strict

geographical limitations and allowed no more than 12 hours before a qualifying event and

one hour afterward.  <u>Id.</u>  The sign code thus "identifie[d] various categories of signs based on

the type of information they convey, then subject[ed] each category to different restrictions."

<u>Id.</u> at 2224.  "The restrictions . . . that appl[ied] to any given sign . . . depend[ed] entirely on

the communicative content of the sign."  <u>Id.</u> at 2227.  This was "a paradigmatic example of

content-based discrimination."  <u>Id.</u> at 1130.  And content-based distinctions only stand if they

survive strict scrutiny.  <u>Id.</u> at 2231.

The sign code in <u>Reed</u> was "not speaker based," as "[t]he restrictions for political,

ideological, and temporary event signs appl[ied] equally no matter who sponsors them," <u>id.</u>,

and therefore <u>Reed</u>'s commentary on speaker-based distinctions is arguably dicta.  But this

Court will not ignore <u>Reed</u>'s guidance on that topic, which is as follows:

> [T]he fact that a distinction is speaker based does not, as the Court of Appeals
> seemed to believe, automatically render the distinction content neutral.
> Because "[s]peech restrictions based on the identity of the speaker are all too
> often simply a means to control content," <u>Citizens United v. Federal Election</u>

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Comm'n, 558 U.S. 310, 340, 130 S. Ct. 876, 175 L.E.2d 753 (2010), we have insisted that "laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference," Turner, 512 U.S., at 658, 114 S. Ct. 2445. . . . Characterizing a distinction as speaker based is only the beginning—not the end—of the inquiry.

Reed, 136 S. Ct. at 2230–31 (emphasis added).[24]

Plaintiffs' challenges here are based on distinctions between speakers. See Plaintiffs' MSJ at 8 ("[Plaintiffs'] fundamental speech right is implicated by the County's unequal treatment of different speakers"). The question then is whether the challenged speaker-based distinctions—(i) allowing "official public signs" but not noncommercial signs by private individuals, and (ii) allowing grandfathered billboard companies to display billboards, but not newcomers—reflect a content preference.

### i.    Public Signs

It is readily apparent that the County's preference for official public signs reflects a preference for that content: the County nearly says as much in arguing that it is an important government function to disseminate information to the public. See County MSJ 2 at 16 ("whether it is in the form of warnings about fines for littering, notices related to restriction on water shortages due to drought, prohibitions on open fires in certain locations or at specific times, the dates and times of public meetings, applications that have been made by owners for changes to their property, the identity and location of public facilities or the availability of public services."). While it is not necessarily unreasonable to believe that a sign alerting passersby to drought conditions has more value than Plaintiffs' current, almost-

---

[24] Following the close of briefing and the motion hearing in this case, the Ninth Circuit issued an order in Lone Star Security & Video, Inc. v. City of Los Angeles, No. 14-55014, 14-55050, slip op. at 13–14 (9th Cir. July 7, 2016), in which it distinguished Reed. The challenged ordinances in Lone Star Security prohibited non-motorized mobile billboard advertising displays and mobile billboards on parked motorized vehicles. Id. at 7. The court held that the ordinances are content neutral because they "regulate the manner—not the content—of affected speech," discriminating against the prohibited billboards based on "their size and mobility alone." Id. at 13. The court explained that "[u]nlike Reed, the mobile billboard ordinances do not single out a specific subject matter for differential treatment, nor is any kind of mobile billboard exempted from regulation based on its content." Id. at 13–14. Lone Star Security thus (1) did not address the issue of speaker based exemptions and (2) did not involve an ordinance that subjected different types of subject matter to different restrictions. Accordingly, it does not affect this Court's analysis under Reed.

United States District Court
For the Northern District of California

indecipherable political messages, see Compl. ¶ 11, and eventual commercial messages, see id. ¶ 12, that belief is still very much a content judgment, see Foti, 146 F.3d at 636 ("Although Menlo Park's exemptions for open house signs and safety, traffic, and informational signs seem innocuous, we base our content-based determination on whether the ordinance singles out certain speech for differential treatment based on the idea expressed. The reasonableness, harmlessness, or worthiness of the idea is irrelevant."); see also City of Ladue v. Gilleo, 512 U.S. 43, 46–47 (1994) (O'Connor, J., concurring) ("it is quite true that regulations are occasionally struck down because of their content-based nature, even though common sense may suggest that they are entirely reasonable."). And of course, distinctions favoring official signs might not always be innocuous. Accordingly, the Court agrees with Plaintiffs that section 17.52.520(A) is content-based.

### ii.      Grandfathered Billboard Companies

Plaintiffs would be on much shakier ground arguing that the preference for grandfathered billboard companies reflects any kind of content preference. There is no difference in the kind of content one billboard company could display over another. Cf. Lone Star Security, slip op. at 13–14 (finding content neutral ordinance that did "not single out a specific subject matter for differential treatment"). Nor would officials have to review the content of a sign in order to determine whether it was permissible; they could look only at the identity of the company submitting it. See Outdoor Media Dimensions, Inc. v. Oregon, 150 Or. App. 106, 945 P.2d 614, 625 (1997) (finding content neutral law granting outdoor advertising permits to those who owned billboards on or before certain date); Maldonado v. Kempton, No. 02-3167 CRB, 2007 WL 108414, at *3–4 (N.D. Cal. Jan. 10, 2007) (holding that grandfathering provision was not content based as "State officials do not even have to read a sign's message to determine if the sign is subject to the State's prohibition on off-premises commercial advertising . . . the official merely reviews State records to determine if the billboard had a permit for such displays prior to the law's enactment or was otherwise lawfully erected." (citing Jones Intercable of San Diego, Inc. v. Chula Vista, 80 F.3d 320,

United States District Court
For the Northern District of California

326 (9th Cir. 1996)); <u>California Outdoor Equity Partners v. City of Corona</u>, No. 15-3172 MMM, 2015 WL 4163346, at *9 (C.D. Cal. Jul7 9, 2015) (noting that laws are content neutral "even where, as here, they 'grandfather' existing billboards and permit them to remain.") (citing <u>Maldonado v. Morales</u>, 556 F.3d 1037, 1048 (9th Cir. 2009)); <u>G.K. Ltd. Travel</u>, 436 F.3d at 1079 (holding that "[a] grandfather provision requiring an officer to read a sign's message for no other purpose than to determine if the text or logo had changed, making the sign now subject to the City's regulations, is not content based.").[25]   Accordingly, the Court agrees with the County that section 17.52.515 is not content-based.

### 4.    Review

As the grandfathering clause is content-neutral and the public signs preference is content-based, the Court applies rational basis review to the grandfathering clause and strict scrutiny to the public signs preference.  <u>See</u> <u>Honolulu Weekly</u>, 298 F.3d at 1047–48.

Rational basis review of the grandfathering section requires the County to demonstrate that the section is rationally related to a legitimate government interest.  <u>See</u> <u>Outdoor Media Group, Inc.</u>, 506 F.3d at 907.  The County argues—and the Court has already found—that the County has "an important and legitimate governmental interest in limiting large signs of the type erected by plaintiffs."  Opp'n to Plaintiffs' MSJ at 12 (citing MSJ Order at 24[26]).  The Court has also already found that section 17.52.515 "advances the County's interests in traffic safety and aesthetics," by addressing its concern about the proliferation of billboards.  MSJ Order at 25.  As the County argues here, "[a]llowing the owners of legally permitted billboards the opportunity to possibly construct other billboards in the County through the

---

[25] <u>See also</u> <u>City of New Orleans v. Dukes</u>, 427 U.S. 297, 303–04 (1976) (grandfathering provisions do not create basis for suspect classification).  It does not appear that Plaintiffs are making a suspect class argument, however.  <u>See</u> Plaintiffs' MSJ at 8 ("The analysis turns on the fact that [Plaintiffs'] fundamental speech right is implicated by the County's unequal treatment of different speakers who erect billboards, not that [Plaintiffs are] a suspect class.").

[26] The Court held: "the County has demonstrated that the billboard ban was enacted in order to implement a substantial government interest.  The purpose of the ban is to 'advance the County's interests in community aesthetics by the control of visual clutter, pedestrian and driver safety, and the protection of property values . . . .'"  <u>Id.</u>

United States District Court
For the Northern District of California

1    implementation of billboard relocation agreements authorized by section 17.54.226, provides

2    a means by which the County can reduce the overall number of billboards and control their

3    location, without the economic burden of compensating the owners for their removal."

4    Opp'n to Plaintiffs' Mot. at 12; County MSJ 2 at 14 (citing Dalton Decl. (dkt. 56) at 2–4

5    (discussing relocation program)).  Accordingly, the Court concludes that the grandfathering

6    section has a rational basis.

7         Strict scrutiny of the public signs preference requires the County to demonstrate that

8    the distinction between public signs and non-public signs "furthers a compelling government

9    interest and is narrowly tailored to that end."  See Reed, 135 S. Ct. at 2231.  This is typically

10   an uphill battle, see Reed, 135 S. Ct at 2234 (Breyer, J., concurring) ("In my view, the

11   category 'content discrimination' is better considered in many contexts, including here, as a

12   rule of thumb, rather than as an automatic 'strict scrutiny' trigger, leading to almost certain

13   legal condemnation."); Williams-Yulee v. Florida Bar, 135 S. Ct. 1656, 1666 (2015) (it is the

14   "rare case[] in which a speech regulation withstands strict scrutiny"), which might be why

15   the County here has not even attempted to fight it, see Opp'n to Plaintiffs' MSJ at 13

16   ("Applying the rational basis test to section 17.52.520(A) . . .").  Setting aside the question of

17   a compelling government interest, the public sign preference here fails because "[a]llowing

18   the government to build any signs without any restrictions," see Reply re Plaintiffs' MSJ at

19   12, while including a variety of different restrictions for different permitted signs, see

20   ALAMEDA, CA., CODE § 17.52.520, is the antithesis of narrow tailoring.  See Reed, 135 S. Ct.

21   at 2231–32; see also id. at 2239 (Kagan, J., concurring) ("the law's distinctions between

22   directional signs and others—does not pass strict scrutiny, or intermediate scrutiny, or even

23   the laugh test. . . . The Town, for example, provides no reason at all for prohibiting more than

24   four directional signs on a property while placing no limits on the number of other types of

25

26

27

28

signs.").[27]

Accordingly, the Court holds that section 17.52.515 is content neutral and passes rational basis review, and that section 17.52.520(A) is content-based and does not withstand strict scrutiny.

## V.    CONCLUSION

For the foregoing reasons, the Court GRANTS the County's Motion (and DENIES Plaintiffs' Motion) as to the facial challenge to section 17.18.130; GRANTS the County's Motion (and DENIES Plaintiffs' Motion) as to the Equal Protection challenge to section 17.52.515; and GRANTS Plaintiffs' Motion (and DENIES the County's Motion) as to section 17.52.520(A).

**IT IS SO ORDERED.**

Dated: July 8, 2015

_____
CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

---

[27] The Court takes notice that Contra Costa County, Marin County, Napa County, San Francisco County, Solano County, and Sonoma County all appear to have ordinances on their books that exempt government signs.  See Request for Judicial Notice (dkt. 85); Exs. C–H; see also Reed, 135 S. Ct. at 2239 (Kagan, J., concurring) ("As the years go by, courts will discover that thousands of towns have such ordinances, many of them 'entirely reasonable.' . . . And as the challenges to them mount, courts will have to invalidate one after the other.").  While the Court is sympathetic with well-intentioned lawmakers trying to keep pace with evolving case law, those ordinances are not before the Court today and have no impact on this decision.  Counties seeking to bring their sign codes into compliance with Reed, 135 S. Ct. at 2233, would do well to review Justice Alito's concurrence, which purports to list "some [sign] rules that would not be content based."