**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  CITIZENS FOR FREE SPEECH, LLC,              No. C14-02513 CRB
    ET AL.,

12                                              **ORDER GRANTING MOTION FOR**
                  Plaintiffs,                   **DAMAGES AND ATTORNEYS' FEES**

13      v.

14  COUNTY OF ALAMEDA,

15               Defendant.
                                        /

16

17        For three years, Plaintiff Citizens for Free Speech[1] has argued that it is entitled to

18  display the billboards that it erected in Alameda County without County approval.  Although

19  Citizens maintained its signs during the pendency of this litigation, this litigation is all but

20  completed, and Citizens has won neither injunctive relief entitling it to display the signs, nor

21  compensatory damages.  Nevertheless, Citizens now asserts that it is the prevailing party, and

22  moves the Court for nominal damages and attorneys' fees.  See Mot. (dkt. 126).  While the

23  County asks the Court to disallow both, the Court must follow the law of the circuit.

24  Accordingly, as explained below, the Court will award Citizens nominal damages of $1 and

25  greatly reduced fees.

26  **I.    PROCEDURAL HISTORY**

27        On September 4, 2014, the Court granted a preliminary injunction for Citizens.  See

28

_____

        [1] Plaintiffs are Citizens for Free Speech and an individual named Michael Shaw.  For ease of
    reference, the Court refers to Plaintiffs collectively as Citizens.

United States District Court
For the Northern District of California

1  Order Granting Motion for Preliminary Injunction (dkt. 34).  The Court held that Citizens

2  was likely to succeed in its challenges to sections 17.18.130 and 17.54.080 of the County's

3  zoning ordinance, because section 17.18.130 gave County officials unfettered discretion, and

4  because there were no procedural safeguards to ensure that County officials would render

5  decisions under sections 17.18.130 and 17.54.080 in a timely manner.  Id. at 15–17.  On

6  September 4, 2014, the Court entered the injunction.  See Preliminary Injunction (dkt. 50).

7       Following the Court's Order Granting in Part and Denying in Part County's

8  Defendant's Motion for Summary Judgment (dkt. 71), the County amended section

9  17.18.130, curing the constitutional deficiencies that Citizens had alleged, and rendering

10 moot Citizens' challenge to that section, see Order on Cross-Motions (dkt. 105) at 7–13.

11 Citizens then abandoned its challenge to section 17.54.080.  See Order Granting in Part and

12 Denying in Part County's Defendant's Motion for Summary Judgment at 9 n.9.

13      In July 2016, the Court issued a lengthy order on the parties' cross-motions for

14 summary judgment, holding that section 17.52.520(A) (a provision that favored signs by

15 public officials) violated the equal protection clause, as it was content-based and did not

16 withstand strict scrutiny.  See Order on Cross-Motions (dkt. 105) at 26.  The County

17 prevailed as to all of the remaining claims, including Citizens' other equal protection claim.

18 See id.  Following that order, the County amended section 17.52.520(A), removing the

19 constitutionally flawed language.  See Request for Judicial Notice (dkt. 117) Ex. 1.

20 Subsequently, the Court dissolved the preliminary injunction at the County's request.

21 See Mot. to Dissolve Inj. (dkt. 121); Motion Hearing (dkt. 125).

22 **II.    DISCUSSION**

23      Citizens now moves for nominal damages, and for an award of attorneys' fees under

24 42 U.S.C. § 1988(b) and California Code of Civil Procedure § 1021.5.  See generally Mot.

25      **A.    Nominal Damages**

26      "Common-law courts traditionally have vindicated deprivations of certain 'absolute'

27 rights that are not shown to have caused actual injury through the award of a nominal sum of

28 money."  Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 308 n.11 (1986) (internal

1    quotation marks omitted); see also Jacobs v. Clark Cty. Sch. Dist., 526 F.3d 419, 426 (9th

2    Cir. 2008) (same).  Further, "[n]ominal damages serve . . . to clarify the identity of the

3    prevailing party for the purposes of awarding attorney's fees and costs in appropriate cases."

4    See Cummings v. Connell, 402 F.3d 936, 943 (9th Cir. 2005), amended, No. 03 17095, 2005

5    WL 1154321 (9th Cir. May 17, 2005).

6          Citizens argues that nominal damages are appropriate because the Court's grant of

7    summary judgment on the single equal protection claim vindicated its fundamental rights, but

8    it suffered no pecuniary damages, as its signs are still up.  Mot. at 2–3.  The County responds

9    that Citizens' challenge to section 17.52.520(A) is moot following that section's amendment,

10   and that Citizens' "newly asserted prayer for nominal damages cannot save" it, because

11   Citizens is not entitled to nominal damages.  See Opp'n (dkt. 127) at 7.  The Court addresses

12   both arguments.

**1.      "Newly Asserted" Request for Nominal Damages**

14         The County is correct that Citizens did not explicitly request nominal damages in its

15   Complaint, but this is not fatal.  The prayer for relief in the Complaint sought, among other

16   things, "actual, consequential, and other special damages in an amount according to proof at

17   trial" and "such other and further relief as the Court deems just, equitable, and proper."  See

18   Compl. (dkt. 1) at 9.  Although some courts have denied nominal damages where a plaintiff

19   indisputably never sought nominal damages, see, e.g., Daskalea v. Wash. Humane Soc'y, 710

20   F. Supp. 2d 32, 44 (D.D.C. 2010), Citizens identifies a Ninth Circuit case in which the court

21   allowed plaintiffs to pursue nominal damages although they had not sought them in their

22   original complaint, only amended to add a nominal damages claim once the defendant moved

23   to dismiss for mootness, "and never made any tactical decision not to request damages."  See

24   Reply (dkt. 128) at 1 (citing Johnson v. Rancho Santiago Cmty. Coll. Dist., 623 F.3d 1011,

25   1018 n.2 (9th Cir. 2010)).  Although the plaintiffs in that case actually amended their

26   complaint to add a request for nominal damages, and Citizens has not, the Court would

27   permit Citizens to amend here if it sought to do so.  Citizens has not sought to do so—instead

28   it argues that its current Complaint covers nominal damages.  See Reply at 1.  The Court

United States District Court
For the Northern District of California

3

**United States District Court**
For the Northern District of California

1   agrees.  See Hynix Semiconductor Inc. v. Rambus, Inc., 527 F. Supp. 2d 1084, 1100 (N.D.

2   Cal. 2007) (citing Basista v. Weir, 340 F.2d 74, 87–88 (3d Cir. 1965)) (request for "such

3   other and further relief as the Court may deem appropriate" suffices to request nominal

4   damages).

5        So long as there is a viable request for nominal damages in the case, then the equal

6   protection claim is not moot.  See Johnson, 623 F.3d at 1018 ("prayer for nominal damages .

7   . . prevents those claims from becoming moot."); see also O'Connor v. Denver, 894 F.2d

8   1210, 1216 (10th Cir. 1990) ("repeal and amendment of the Code did not moot plaintiffs'

9   claim for nominal damages").

10                    **2.        Availability of Nominal Damages**

11        The County also contends that nominal damages are not available for a facial

12  challenge, in which the law at issue is never applied to the plaintiff.  See Opp'n at 6, 8–10.

13  There is out-of-circuit support for this position.  See, e.g., CMR D.N. Corp. v. City of Phila.,

14  703 F.3d 612, 624 (3d Cir. 2013) (quoting Eide v. Sarasota Cty., 908 F.2d 716, 722 (11th

15  Cir. 1990) ("When a litigant challenges the legality of a zoning law on the theories that the

16  law violates equal protection . . . for 'a facial challenge, the remedy is the striking down of

17  the regulation.  In the case of an as applied challenge, the remedy is an injunction . . . and/or

18  damages."); id. at 628 ("We find no authority . . . for the proposition that a plaintiff is entitled

19  to nominal damages simply based on the existence of a zoning law that has never been

20  applied to it."); Granite State Outdoor Advert., Inc. v. City of St. Petersburg, Fla., 348 F.3d

21  1278, 1283 (11th Cir. 2003) ("Given that we upheld as constitutionally sound the provisions

22  of the sign ordinance that applied to Granite . . . Granite is not entitled to nominal

23  damages."); Daskalea, 710 F. Supp. 2d at 44 ("while a plaintiff may be entitled to nominal

24  damages for a violation of his procedural due process rights, even absent proof of an injury, a

25  plaintiff is not entitled to nominal damages, even absent proof that his procedural due process

26  rights were in fact violated.").

27        But the best that the County can point to in this circuit is that the nominal damages

28  cases in Citizens' opening brief involved a law or policy actually being applied to a plaintiff.

United States District Court
For the Northern District of California

1    See Opp'n at 8 (citing Jacobs, 526 F.3d 419; Estate of Macias v. Ihde, 219 F.3d 1018 (9th

2    Cir. 2000)).  The Ninth Circuit noted in one of those case that the plaintiff's injury was

3    caused by an unlawful policy, see Jacobs, 526 F.3d at 426–27 (explaining that plaintiff had

4    standing to bring non-moot nominal damages claim because she alleged an injury in fact

5    "caused by . . . policy."),[2] but it has nowhere held that nominal damages are not available to a

6    plaintiff to whom a policy is not applied.[3]  While this Court held earlier in this case that

7    nominal damages are not available for an overbreadth challenge under the First Amendment,

8    see Order on Cross-Motions at 13–14 (citing Outdoor Media Grp., Inc. v. City of Beaumont,

9    506 F.3d 895, 907 (9th Cir. 2007)), the claim at issue is an equal protection claim.  Even

10   accepting the County's characterization of Citizens' claim as a facial equal protection claim,[4]

11   the County points to no carve-outs for such claims, and even concedes: "The Ninth Circuit

12   has never considered whether nominal damages are available in facial challenges generally."

13   Opp'n at 10.

14        Thus, although there is some logical appeal to the County's argument, there is

15   currently not support for it in the Ninth Circuit.  Instead, the Ninth Circuit has stated quite

16   broadly that "In this Circuit, nominal damages must be awarded if a plaintiff proves a

17   violation of his [or her] constitutional rights."  Estate of Macias, 219 F.3d at 1028 (quoting

18   Floyd v. Laws, 929 F.2d 1390, 1403 (9th Cir. 1991)).  "A district court bound by circuit

19   authority . . . has no choice but to follow it."  Hart v. Massanari, 266 F.3d 1155, 1175 (9th

20   Cir. 2001).  This Court has held that Citizens prevailed on its equal protection claim based on

21

22        [2] See also Covenant Media of Cal., LLC v. City of Huntington Park, 377 F. Supp. 2d 828, 843
23   (C.D. Cal. 2005) ("a party subjected to an unconstitutional sign ordinance is entitled to at least nominal
     damages.").

24        [3] Whether the "unconstitutional ordinance" here was applied to Citizens depends on how
25   broadly one defines the ordinance.  The County referenced parts of the zoning ordinance in its Notice
     to Abate, see Shaw Decl. (dkt. 11-3) Exs. C, D, but never relied on the particular provision of the
26   ordinance that this Court found unconstitutional.

27        [4] As Citizens' counsel noted at the motion hearing, it is difficult to categorize an equal protection
     challenge in this way.  However, the provision of the ordinance that the Court found unconstitutional
     did not actually prohibit or otherwise restrict Citizens' signs; rather, it reflected a content-based
28   preference for government-based speakers.  See Order on Cross Motions at 22–23.  Thus, it is difficult
     to imagine how the section could be applied to Citizens.

1 section 17.52.520(A), which privileged government speech over speech by private speakers,

2 like Citizens.  See Order on Cross-Motions at 26.  Accordingly, Citizens is entitled to

3 nominal damages.  See Estate of Macias, 219 F.3d at 1028.  The Court will award Citizens

4 nominal damages of one dollar to acknowledge the "importance to organized society" that its

5 constitutional rights "be scrupulously observed."  See Jacobs, 526 F.3d at 426.

### B.      Attorneys' Fees

7      A plaintiff who receives nominal damages is a prevailing party under 42 U.S.C.

8 § 1988(b).  Farrar v. Hobby, 506 U.S. 103, 112 (1992).  "[A] plaintiff 'prevails' when actual

9 relief on the merits of his claim materially alters the legal relationship between the parties by

10 modifying the defendant's behavior in a way that directly benefits the plaintiff."  Id. at

11 111–12.  "A judgment for damages in any amount, whether compensatory or nominal,

12 modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay

13 an amount of money he otherwise would not pay."  Id. at 113.  Citizens is therefore a

14 prevailing party.  See id. at 112.[5]

### 1.      Not a De Minimus Victory

16      The County argues that, even if the Court awards Citizens nominal damages and

17 thereby finds it to be a prevailing party, the Court should award no fees.  See Opp'n at 13

18 (citing Farrar, 506 U.S. at 112).

19      A technical or insignificant nominal damages award does not negate a plaintiff's

20 prevailing party status, but "it does bear on the propriety of fees awarded under § 1988."

21 Farrar, 506 U.S. at 114.  In Farrar, the plaintiff in a civil rights case sought damages of $17

22

23      [5] The County's argument on this subject—that Citizens did not modify the County's behavior
24 because Citizens did not get a permanent injunction, see Opp'n at 11–12—conflicts with Farrar, which
unambiguously holds that nominal damages modify the defendant's behavior sufficiently to confer
prevailing party status, see Farrar, 506 U.S. at 112–13.  The County's related argument, that its
25 voluntary change in the ordinance cannot support prevailing party status, see Opp'n at 12 (citing
Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 605
26 (2001)), relies on a misapplication of Buckhannon, which the Ninth Circuit has rejected, see Benton v.
Or. Student Assistance Comm'n, 421 F.3d 901, 906–07 (9th Cir. 2005) (explaining that Buckhannon
27 was about whether a party could be considered a prevailing party when he had failed to secure a
judgment but nonetheless achieved a voluntary change in the defendant's conduct, not about a plaintiff
28 who was a prevailing party by virtue of a nominal damages award and whose suit also brought about
some public benefit); see also Klein v. City of Laguna Beach, 810 F.3d 693, 701 n.8 (2016) (same).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   million but received only $1 in nominal damages.  Id. at 114.  Although Farrar was the

2   prevailing party, the Court recognized that, given such a discrepancy, "[i]n some

3   circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no

4   attorney's fees at all."  Id. at 115.  Thus, "[w]hen a plaintiff recovers only nominal damages

5   because of his failure to prove an essential element of his claim for monetary relief . . . the

6   only reasonable fee is usually no fee at all."  Id.

7          The Ninth Circuit has interpreted Farrar to mean that "an award of nominal damages

8   is not enough," and that if a court is to award attorneys' fees after a judgment for only

9   nominal damages, "it must point to some way in which the litigation succeeded, in addition

10  to obtaining a judgment for nominal damages."  Wilcox v. City of Reno, 42 F.3d 550, 555

11  (9th Cir. 1994) (emphasis in original).  In assessing whether the litigation has, on the one

12  hand, succeeded "in some way beyond the judgment for nominal damages," or, on the other

13  hand, resulted in merely a technical or de minimus victory, the Ninth Circuit has approved

14  consideration of the three factors identified by Justice O'Connor in her Farrar concurrence.

15  See Cummings, 402 F.3d at 947.  Justice O'Connor explained, first, that "a substantial

16  difference between the judgment recovered and the recovery sought suggests that the victory

17  is in fact purely technical."  Farrar, 506 U.S. at 120–21 (O'Connor, J., concurring); see also

18  id. at 120 (Farrar "asked for a bundle and got a pittance").  Second, she explained that courts

19  should look at "the significance of the legal issue on which the plaintiff claims to have

20  prevailed."  Id. at 121.  And third, she explained that a victory "might be considered material

21  if it also accomplished some public goal other than occupying the time and energy of

22  counsel, court, and client."  Id.  at 121–22.

23                          a.      Relief Sought and Received

24         As to the relief sought compared with the relief received, the difference is

25  considerable.  Citizens requested "temporary, preliminary, and permanent injunctive relief"

26  allowing it to maintain its signs, "actual damages" in an unspecified amount, "additional

27  actual, consequential, and other special damages," attorneys' fees, prejudgment interest,

28  costs, and "other and further relief."  See Compl. at 9.  The Court initially granted a

**United States District Court**
For the Northern District of California

1   preliminary injunction (although not on the equal protection claim), but has since dissolved

2   that injunction.  See Order Granting Motion for Preliminary Injunction; Preliminary

3   Injunction; Mot. to Dissolve Inj.; Motion Hearing.  The Court has not granted a permanent

4   injunction, despite Citizens' repeated requests.  See Proposed Judgment and Permanent

5   Injunction (dkt. 107); Pltfs.' Brief re Status Conference (dkt. 114) at 5 ("Citizens is entitled

6   to a permanent injunction"); Opp'n to Motion to Dissolve Preliminary Injunction; Request

7   for Modified Permanent Injunction (dkt. 123) at 6–8 ("The Court should enjoin enforcement

8   of the unconstitutional sign code"); Order re Status Conference (dkt. 109) (denying proposed

9   judgment and "permanent injunction which would grant Plaintiffs sweeping relief.").

10  Indeed, the County stated at the motion hearing that it is considering the removal of Citizens'

11  signs and that the dissolution of the preliminary injunction "frees [it] up" to take such action.

12  All that Citizens can point to by way of results achieved is nominal damages of one dollar,

13  and having seen the County amend section 17.18.130 (to cure the constitutional deficiency

14  that Citizens alleged) and section 17.52.520(A) (to cure the constitutional deficiency that the

15  Court found).  See Order on Cross-Motions at 7–13, 26; Request for Judicial Notice Ex. 1.

16  Neither amendment has any obvious benefit for Citizens.

17         These results were not the "primary goal of the litigation."  In Klein v. City of Laguna

18  Beach, 810 F.3d 693, 699–700 (9th Cir. 2016), the Ninth Circuit recently held that attorneys'

19  fees were warranted for a plaintiff who received nominal damages but whose goal was to

20  legalize amplified speech in Laguna Beach and who "gained the relief that he primarily

21  sought when the challenged law was amended to expand the permissible use of amplification

22  devices."  Citizens' success has been far more limited.  Unlike the plaintiff in Klein, it has

23  not achieved a change in the law that justifies the continued display of its billboards.

24         Nonetheless, the Ninth Circuit has also stated that "Farrar's holding is limited to cases

25  in which the plaintiff seeks substantial monetary damages but obtains only a nominal award."

26  See Stivers v. Pierce, 71 F.3d 732, 753 (9th Cir. 1995).  While Citizens "did not obtain all the

27  relief sought, [it] did obtain 'tangible results'. . . ."  See id.  The County's amendment of

28  section 17.52.520(A) to correct the unconstitutional language favoring speech by public

United States District Court
For the Northern District of California

1   officials is a tangible result that Citizens achieved "in addition to obtaining a judgment for

2   nominal damages." See Wilcox, 42 F.3d at 555. In Wilcox, the jury determined that a city's

3   use of force policy was unconstitutional, and the city then modified that policy. Id. at 556.

4   The Ninth Circuit held that the "lawsuit achieved admirable results," warranting fees. Id. at

5   556–57; see also Guy v. City of San Diego, 608 F.3d 582, 588–90 (9th Cir. 2010) (in

6   addition to nominal damages, jury verdict that use of force was excessive "offers clear and

7   important guidance to the police department, which is a sufficiently tangible result" to

8   warrant fees); Klein, 810 F.3d at 700 (pointing to voluntary repeal of ordinance as basis of

9   fee award). Citizens' "tangible result" here is likewise sufficient to justify a fee award.

10  See Wilcox, 42 F.3d at 555 ("If the lawsuit achieved other tangible results—such as sparking

11  a change in policy . . . —such results will, in combination with an enforceable judgment for a

12  nominal sum, support an award of fees.").

### b.      Significance and Public Benefit

14          As to the significance of the legal issue and the public benefit, Citizens boasts that its

15  litigation "sparked a veritable overhaul of the County's sign restrictions and related laws."

16  Reply (dkt. 128) at 4. This is hyperbolic. Still, the equal protection claim that Citizens

17  prevailed upon is significant. In AmeriTitle, Inc. v. Gilliam Cty., 912 F. Supp. 2d 968,

18  970–71 (D. Or. 2012), Judge Mosman held that "[a] case where a jury finds . . . an

19  unconstitutional arrest by an individual officer, but awards only nominal damages, might

20  seem to be a case for which no fees would be awarded. But a case of nominal damages that

21  declares an existing government policy unconstitutional" raises a right to fees. The court

22  explained that "our plaintiff obtained real relief: a solid declaration from the jury that the

23  county had an unconstitutional policy, not just an isolated practice." Id. at 971. It went on:

24  "Further, that policy concerned an important public issue, involving government intervention

25  in large economic development projects." Id. Similarly here, the Court held that section

26  17.52.520(A) of the zoning ordinance violated the equal protection clause by privileging

27  speech by government speakers over private citizens. While not terribly significant to

28  Citizens' case, that finding—and the County's subsequent amendment of the section—was

9

1  legally significant, as it served to correct an unconstitutional ordinance dealing with both the

2  equal protection clause and the First Amendment, important public issues.  The public will

3  (theoretically) benefit by having a constitutional zoning ordinance in place.

4      The Court therefore holds that Citizens is not only a prevailing party, but that the

5  Farrar exception does not apply because Citizens is able to point to some way in which the

6  litigation succeeded in addition to the award of nominal damages.  See Wilcox, 42 F.3d at

7  555.  However, as discussed below, the Court will significantly reduce the fees awarded in

8  light of Citizens' limited success.

9                    **2.      Reasonable Fee**

10     Citizens seeks fees of $199,030 (plus costs), which reflects an hourly billing rate of

11 $650 per hour multiplied by 290.2 hours for all work on this case leading up to this motion,

12 plus $650 per hour multiplied by 17 hours for work on this motion.  See Furman Decl. (dkt.

13 126-1) ¶ 5; Ex. A (billing records).[6]  The County argues that if the Court awards fees, it

14 should "substantially reduce the amount due to Plaintiffs' limited success."  Opp'n at 15.

15                    **a.      Legal Standard**

16     Once a court determines that a civil rights plaintiff has prevailed, the court may award

17 reasonable attorneys' fees. Friend v. Kolodzieczak, 72 F.3d 1386, 1389 (9th Cir. 1995).  To

18 determine the amount of the award, a court usually begins by calculating the "lodestar"

19 amount—the number of hours reasonably spent in achieving the results obtained multiplied

20 by a reasonable hourly rate. Id.; Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).  The court

21 is to "exclude from this initial fee calculation hours that were not 'reasonably expended,'"

22 including hours that are excessive, redundant or unnecessary. Hensley, 461 U.S. at 434.  The

23 lodestar calculation "does not end the inquiry," however. Id.  The district court may adjust

24

25

26

27 _____

28      [6] When the Court multiplies 290.2 x $650, it gets $188,630 (not the $187,980 the billing records
   reflect).  Adding the $188,630 to the 17 x $650 ($11,050), it appears that the total amount sought should
   be $199,680 and not $199,030.

United States District Court
For the Northern District of California

1    the award depending on a variety of factors,[7] the most important of which is the degree of

2    success obtained. Id. at 436.

3          If a plaintiff has prevailed on some, but not all, of its claims, the court is to determine

4    whether the successful claims are related to the unsuccessful ones. Id. at 434–35. If the

5    claims are unrelated, then no fees may be awarded for the unsuccessful claims. Id.[8] If the

6    claims are related, then the "district court should focus on the significance of the overall

7    relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."

8    Id. at 435.

9                          **b.    Calculation**

10                              **i.    Lodestar**

11         The County does not challenge Citizens' counsel's rate of $650 per hour,[9] and only

12   challenges a few specific billing entries that it deems excessive. See Opp'n at 16 (citing

13   Hensley, 461 U.S. at 434). First, the County challenges sixteen hours for attending two case

14   management conferences, on November 7, 2014 and October 14, 2016, billed at 8 hours

15   each; the County argues that counsel could have attended telephonically. See id.; Furman

16   Decl. Ex. A at 5, 9. Citizens only responds that both were important hearings where the

17

18      [7] The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment of the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or

19   contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability'

20   of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Hensley, 461 U.S. at 430 n.3; see also Kerr v. Screen Extras Guild, Inc., 526 F.2d 67,

21   70 (9th Cir. 1975), cert. denied, 425 U.S. 951 (1976) (enumerating the same twelve factors).

22      [8] Citizens cites to McCown v. City of Fontana, 565 F.3d 1097, 1103 (9th Cir. 2009) for the broad proposition that a "district court should not attempt to divide the request for attorney's fees on a claim-

23   by-claim basis." See Reply at 7–8. But the beginning of the quoted sentence specifies that it pertains to related claims. See McCown, 565 F.3d at 1103.

24

25      [9] Counsel's rate appears appropriate under the Lafferty Index attached to counsel's declaration, given that counsel has been out of law school since 2003. See Furman Decl. ¶ 2; Ex. B. The Index does not appear to be tied to any particular geographical location. Nevertheless, it is some evidence of the

26   customary fee. See Hensley, 461 U.S. at 430 n.3. Nor does the Court have any reason to doubt counsel's skill in performing the legal services properly, that his work on this case precluded, to some

27   degree, his employment on other cases, or that counsel is experienced, able, and has a fine reputation. See Hensley, 461 U.S. at 430 n.3. Counsel did not state in his declaration whether the fee was "fixed

28   or contingent," see id., but the billing record he attached reflects that there have been $0.00 in payments on the balance of $187,980, so the Court assumes that it is contingent. See Furman Decl. Ex. A at 1.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   Court might have set trial dates or might have "sought to determine the form of judgment."

2   See Reply at 6.  No matter.  The time is excessive for case management conferences, and will

3   be reduced from sixteen to two hours total.  The County also challenges Citizens' 8 hours for

4   traveling to and attending the hearing on the County's Motion to Dismiss the Preliminary

5   Injunction, which lasted five minutes.  See Opp'n at 16.  However, counsel could not have

6   anticipated that the hearing would be so brief, and it at least involved an important issue.

7   The Court will not adjust this entry.

8        The County also challenges counsel's claiming of 22 hours over two days (June 3 and

9   June 4, 2015) to travel to Oakland, defend the deposition of Michael Shaw, and take the

10  County's 30(b)(6) deposition.  See id. (citing Furman Decl. Ex. A at 6–7).  The County

11  argues that these entries should be reduced by six hours because counsel represented that he

12  would cap his time at 8 hours per day while traveling.  See id.  Counsel represented that his

13  "fees charged for travel to San Francisco were capped at eight hours per travel event in both

14  directions."  Mot. at 7.  Citizens explains in its reply brief that counsel did cap travel at eight

15  hours per trip but that the additional time on June 3 and 4 was spent in deposition (seven

16  hours per day).  See Reply at 6.  This seems reasonable; the Court will not adjust this entry.

17       Accordingly, the Court begins with $650 per hour multiplied by 276.2 hours (290.2

18  minus 14), which is $179, 530, plus $650 per hour multiplied by the 17 hours spent on this

19  motion, which is $11,050—a total of $190,580.

20                          **ii.    Beyond the Lodestar**

21       Because Citizens only prevailed on one of its claims, the Court must next consider

22  whether the successful equal protection claim is related to the remaining unsuccessful claims.

23  Hensley, 461 U.S. at 434–35.[10]  Hensley noted that "there is no certain method of

24  determining when claims are 'related' or 'unrelated,'" but that related claims "will involve a

25  common core of facts or will be based on related legal theories."  Id. at 437 n.12 (adding that

26

27       [10] Some courts seem to include this discussion in the initial calculation of the lodestar and others
    in the adjustment to the lodestar.  Compare Stonebrae, L.P. v. Toll Bros, Inc., No. C-08-0221 EMC,
28  2011 WL 1334444, at *9–11 (N.D. Cal. April 7, 2011) (initial calculation of lodestar); and Rodriguez
    v. Barrita, Inc., 53 F. Supp. 3d 1268, 1287–88 (N.D. Cal. 2014) (requested reduction to lodestar).

**United States District Court**
For the Northern District of California

1    counsel "should identify the general subject matter of his time expenditures."), 435.  This

2    circuit has "generously applied <u>Hensley</u>'s test of relatedness, holding that claims are 'related

3    if either the facts or the legal theories are the same.'"  See <u>Stonebrae</u>, 2011 WL 1334444, at

4    *10 (citing <u>Webb v. Sloan</u>, 330 F.3d 1158, 1169 (9th Cir. 2003)).  The Ninth Circuit has

5    further advised that "the test is whether relief sought on the unsuccessful claim is intended to

6    remedy a course of conduct entirely distinct and separate from [the] course of conduct giving

7    rise to the injury on which the relief granted is premised."  See <u>Thorne v. City of El Segundo</u>,

8    802 F.2d 1131, 1141 (9th Cir. 1986) (internal quotation marks omitted).

9         Despite the Ninth Circuit's generous view of relatedness in general, it has held that

10   claims were unrelated in a case much like this one.  In <u>Outdoor Systems, Inc. v. City of</u>

11   <u>Mesa</u>, 997 F.2d 604, 608 (1993), billboard owners brought suit challenging the validity of

12   city sign codes, alleging that the codes "violated Arizona statutory law, article II of the

13   Arizona Constitution, and the First, Fifth, and Fourteenth Amendments to the United States

14   Constitution."  The district court held that the code violated the First Amendment by favoring

15   commercial speech over noncommercial speech, but denied the remaining claims.  <u>Id.</u>  On

16   appeal, the billboard company challenged the district court's decision to limit fees to work

17   done on the First Amendment claim, arguing that "all of its claims were interrelated and that

18   it deserves fees for work done on its unsuccessful arguments as well as its successful one."

19   <u>Id.</u> at 618.  The Ninth Circuit commented that the "imprecise test" for determining whether

20   claims are related "is particularly difficult to apply in this case, as it arises not so much from

21   an incident or course of conduct, but instead involves, for the most part, a facial challenge to

22   [the city's] sign code."  <u>Id.</u> at 619.  The court held that the billboard company's First

23   Amendment claim was indeed "distinctly different" from its unsuccessful claims.  <u>Id.</u> ("The

24   other challenges brought . . . are obviously distinct from its argument that the original sign

25   code on its face preferred commercial over noncommercial speech.").  Observing that the

26   unsuccessful claims "rest on different legal theories, focus on different aspects of the sign

27   codes, and rely on different facts for support," the court held that the district court had not

28   abused its discretion in limiting attorneys' fees to the successful First Amendment claim.  <u>Id.</u>

**United States District Court**
For the Northern District of California

1  at 619–20.

2      In its complaint, Citizens included very broadly worded challenges under the First

3  Amendment, equal protection clause, "civil rights violations," and the right to free speech

4  under the California Constitution.  See generally Compl.  By the filing of the County's first

5  summary judgment motion, it was clear that Citizens was pursuing an as-applied challenge

6  under the First Amendment, facial challenges under the First Amendment to five different

7  sections of the ordinance, and equal protection challenges to two still different sections.  See

8  Order Granting in Part and Denying in Part County's Defendant's Motion for Summary

9  Judgment at 2, 29–30.[11]  While the successful equal protection claim as to section

10  17.52.520(A) (involving government speakers) involved the same legal theory as the

11  unsuccessful equal protection claim as to section 17.52.515 (involving grandfathered

12  billboards), the remaining claims "rest on different legal theories, focus on different aspects

13  of the sign codes, and rely on different facts for support."  See Outdoor Systems, 997 F.2d at

14  619–20.  Citizens' work on the unsuccessful claims (aside from the unsuccessful equal

15  protection claim) would not have "aided the work done on the merits of the [successful

16  claim]."  See Schwartz v. Sec. of Health & Human Srvcs.., 73 F.3d 895, 903 (9th Cir.

17  1995).[12]  Therefore, the Court concludes that the successful equal protection claim is related

18  to the unsuccessful equal protection claim, but not to the other unsuccessful claims.

19      Having found most of the claims unrelated, the Court is supposed to disallow fees

20  attributable to the unrelated claims.  See Hensley, 461 U.S. at 434–35.  But here there is no

---

22  [11] By the filing of the Cross-Motions, the only issues left in the case were Citizens' continued
facial challenge under the First Amendment to a now-superseded ordinance section, and the equal
protection challenges to the two sections.  See Order re Cross-Motions at 1–2.  The equal protection
23  claims were still in the case at that point because the County had essentially forgotten to address them
in the opening brief of its first motion.  See Order Granting in Part and Denying in Part County's
24  Defendant's Motion for Summary Judgment at 29–30.

25  [12] Citizens' argument, repeated at the motion hearing, that "this case would never have gotten
to the ultimate summary judgment without Citizens' other challenges" suggests that the scattershot
26  procedural history of the case is a good thing, because it gave Citizens time to eventually make a
persuasive equal protection argument.  See Reply at 8 (citing Order on Cross-Motions at 18 ("Plaintiffs'
27  argument is more thorough this time. . .")).  But keeping the litigation alive by pursuing numerous
unsuccessful claims before finally prevailing on a different claim does not make the claims related, or
28  actually involve the merits of the successful claim.  See Schwartz, 73 F.3d at 903.  It also consumes a
number of resources.

14

1   good way to do that: Citizens' counsel's billing records do not identify which claims he was

2   working on when.  See generally Furman Decl. Ex. A.  When that happens, the Ninth Circuit

3   instructs that courts are to simply reduce the total amount of time spent to reflect the

4   plaintiff's limited success.  See Webb v. Sloan, 330 F.3d 1158, 1169 (9th Cir. 2003) ("If it is

5   impossible to isolate the truly unrelated claims from those related claims, the district court

6   should instead reflect that limited success in Hensley's second step: the significance of the

7   overall relief in relation to the hours reasonably expended on the litigation.").[13]

8          The Court rejects the County's invitation to assess the degree of Citizens' success by

9   calculating either the number of sections challenged or the number of pages devoted to each

10  claim in Citizens' briefing.  See Opp'n at 17–18;  McCown, 565 F.3d at 1105 ("district court

11  need not be so mechanical as to divide the amount of fees and costs requested by the number

12  of claims . . . [but] should take into account [the plaintiff's] limited success.");  Hensley, 461

13  U.S. at 435 n.11 (rejecting "mathematical approach comparing the total number of issues in

14  the case with those actually prevailed upon").  "The result is what matters."  Gates v.

15  Deukmejian, 987 F.2d 1392, 1404 (9th Cir. 1992) (quoting Hensley, 41 U.S. at 435)

16  (emphasis added in Gates).

17         As discussed above, see supra section II.B.1.a, this was not Citizens' desired result.

18  Citizens did not receive any damages, aside from $1 in nominal damages.  Citizens did not

19  receive a permanent injunction allowing it to maintain its signs.  After nearly three years of

20  litigation, a motion for a temporary restraining order and preliminary injunction (dkt. 11), a

21  motion for summary judgment by the County (dkt. 55), cross-motions for summary judgment

22  (dkts. 81, 86), briefing on both the scope of the preliminary injunction (dkts. 45, 47) and the

23  dissolution of the preliminary injunction (dkt. 121), and now a motion for fees (dkt. 126),

24

25

26

27

28

---

[13] This means that the Court's determination of whether the claims are related or unrelated, although required by the Ninth Circuit, is somewhat academic: no matter the answer, the Court's next step is to determine whether the lodestar is reasonable in relation to the results obtained.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1 very little has actually been accomplished.  Citizens only prevailed on one claim,[14] after

2 which the County voluntarily amended its ordinance to correct the unconstitutional

3 language—and the amendment did not actually benefit Citizens.  That relief compares quite

4 unfavorably to Klein, 810 F.3d at 699–700, where the plaintiff "gained the relief that he

5 primarily sought when the challenged law was amended."  The Court does not penalize

6 Citizens for failing to receive all of the relief it requested.  See Hensley, 461 U.S. at 435

7 n.11; see also Quesada v. Thomason, 850 F.2d 537, 539–40 (9th Cir. 1988).  But it must

8 recognize that Citizens received almost nothing, aside from nominal damages.  Citizens'

9 level of success does not make the hours expended a satisfactory basis for the fee award.  See

10 Hensley, 461 U.S. at 434.[15]

11      In light of the poor results achieved, the Court reduces Citizens' fee award to 20% of

12 what it seeks.  "[W]hen faced with a massive fee application the district court has the

13 authority to make across-the-board percentage cuts either in the number of hours claimed or

14 in the final lodestar figure 'as a practical means of trimming the fat from a fee application.'"

15 Gates, 987 F.2d at 1399 (citing N.Y. State Ass'n for Retarded Children v. Carey, 711 F.2d

16 1136, 1146 (2d Cir. 1983)); but see Moreno v. City of Sacramento, 534 F.3d 1106, 1116 (9th

17 Cir. 2008) ("if all the district court offers is a conclusory statement that a fee request is too

18 high, then we can't tell if the court is applying its superior knowledge to trim an excessive

19 request or if it is randomly lopping off chunks of the winning lawyer's reasonably billed

20 fees.").  The Court has selected 20% of the lodestar—and not less—because the case did

21 present difficult questions, and implicate evolving authority, at the intersection of equal

22

23     [14] As the Court noted previously, it never held that another section of the ordinance, section
24 17.18.130, was unconstitutional, nor granted summary judgment for Citizens on that section. See Order
re Cross-Motions at 4 n.5.  Citizens succeeded in preventing the County from prevailing as to that
25 section, but the County then amended that section voluntarily, mooting the claim. Id. at 4, 13; see
Benton, 421 F.3d at 907 (voluntary change in defendant's conduct might be relevant to reasonableness
26 of award).  Similarly, though Citizens initially attained a preliminary injunction, the Court later
dissolved that injunction when Citizens dropped its challenge to one section and the County amended
27 the other. See Mot. to Dissolve Injunction at 2–3; Motion Hearing.  The success attributable to these
earlier skirmishes is minor.

28     [15] The Court therefore disagrees with Citizens' counsel, who argued at the motion hearing that
Citizens' was a "modest request."

1   protection and First Amendment law.  See Order on Cross-Motions at 15 (noting that the

2   "parties are far from clear in their briefing about what legal framework governs"), 21

3   (questioning whether Ninth Circuit authority remained good law in light of Reed v. Town of

4   Gilbert, 135 S. Ct. (2015)); Hensley, 461 U.S. at 430 n.3.  The parties' need to keep pace

5   with rapidly developing case law also impacted the time limitations faced by counsel.  See

6   Order on Cross-Motions at 18 n.20 ("The parties' briefing on summary judgment had been

7   complete for two weeks when Plaintiffs submitted a Notice of Supplemental Authority

8   alerting the Court to the Reed decision."); Hensley, 461 U.S. at 430 n.3.  But other than the

9   complexity and evolving nature of the law, the Court does not find that any of the other

10  Hensley factors not already subsumed in the Court's discussion[16] impact the reasonableness

11  of the award.  The case was not particularly undesirable, and there is nothing in the record

12  relating to the nature of counsel's relationship with the client or awards in similar cases.

13  See Hensley, 461 U.S. at 430 n.3.

14       Accordingly, the Court will award Citizens 20% of $190,580, or $38,116, in

15  attorneys' fees, as well as costs.

### c.     Cal. Code of Civil Procedure § 1021.5

17       Finally, Citizens also seeks fees under California Code of Civil Procedure § 1021.5.

18  See Mot. at 5.  Under that section,

> a court may award attorney' fees to a successful party against one or more
> opposing parties in any action which has resulted in the enforcement of an
> important right affecting the public interest if: (a) a significant benefit, whether
> pecuniary or nonpecuniary, has been conferred on the general public or a large
> class of persons, (b) the necessity and financial burden of private enforcement,
> or of enforcement by one public entity against another public entity, are such as
> to make the award appropriate, and (c) such fees should not in the interest of
> justice be paid out of the recovery, if any.

Cal. Civ. Proc. Code § 1021.5.  An award under section 1021.5 "is appropriate" if "the cost

of the claimant's legal victory transcends his personal interest, that is, when the necessity for

pursuing the lawsuit placed a burden on the plaintiff out of proportion to his individual stake

---

[16]  See Morales v. City of San Rafael, 96 F.3d 359, 363–64 (9th Cir. 1996), opinion amended on denial of reh'g, 108 F.3d 981 (9th Cir. 1997) ("After making that computation, the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the Kerr factors that are not already subsumed in the initial lodestar calculation.").

17

**United States District Court**
For the Northern District of California

1  in the matter." In re Conservatorship of Whitley, 50 Cal. 4th 1206, 1215 (2010) (internal

2  quotation marks omitted).

3       There are a number of reasons why an award under section 1021.5 is inappropriate

4  here.  Chiefly, Citizens nowhere in its motion even seeks to demonstrate that the litigation

5  "placed a burden" on it "out of proportion to [its] individual interests in the matter." See id.

6  To the contrary, Citizens was financially motivated to bring this suit, as it wanted to

7  eventually rent its signs out for commercial advertisements.  See Compl. ¶¶ 10, 12; Proposed

8  Judgment and Permanent Injunction; Pltfs.' Brief re Status Conference at 5; Opp'n to Motion

9  to Dissolve Preliminary Injunction; Request for Modified Permanent Injunction at 6–8; see

10 also Save Oxnard Shores v. Cal. Coastal Comm'n, 179 Cal. App. 3d 140, 154 (1986)

11 (holding in case in which "members merely desired to construct residences on their

12 oceanfront lots," that "the public benefit, if any, was incidental by comparison to the purely

13 private advantage for the members" of property owners association).  Citizens in its reply

14 brief argues that its having "receive[d] some benefit from the litigation" does not disqualify it

15 from recovery under section 1021.5, see Reply at 9 (citing Saleeby v. State Bar, 39 Cal. 3d

16 547 (1985)), but no one suggests that it does.  The problem is not that Citizens received

17 "some benefit," but that Citizens has made no showing that the litigation "placed a burden"

18 on it "out of proportion to [its] individual interests in the matter." See In re Conservatorship

19 of Whitley, 50 Cal. 4th at 1215.

20      The Court denies fees under section 1021.5.

21 **III.   CONCLUSION**

22      For the foregoing reasons, the Court GRANTS the request for nominal damages of

23 one dollar, and awards fees of $38,116 and costs under 42 U.S.C. § 1988.

24      **IT IS SO ORDERED.**

25

26 Dated: March 8, 2017

27 CHARLES  R. BREYER
   UNITED STATES DISTRICT JUDGE

28

United States District Court
For the Northern District of California